# DURLEY v. MAYO, CUSTODIAN, FLORIDA STATE PRISON.

No. 489. Argued April 2, 1956.—Decided June 4, 1956.

*Neal P. Rutledge,* acting under appointment by the Court, 350 U. S. 900, argued the cause and filed a brief for petitioner.

*Reeves Bowen,* Assistant Attorney General of Florida, argued the cause for respondent. With him on the brief was *Richard W. Ervin,* Attorney General.

MR. JUSTICE BURTON delivered the opinion of the Court.

In this case our jurisdiction is questioned by the State of Florida because the judgment of the Supreme Court of that State, which we are asked to review and which was rendered without opinion, may have rested upon an adequate state ground. For the reasons hereafter stated, we find that to be true with the result that we have no jurisdiction to entertain this petition or to consider the merits of the federal questions suggested by petitioner. While we thus deem petitioner's allegations of fact as to the merits of this case to be irrelevant here, we imply nothing as to their truth or falsity, and we refrain from any discussion that depends upon or assumes their truth.

In 1945, petitioner Durley was convicted by a jury in the Criminal Court of Record for Polk County, Florida, on two informations. In each he was charged, in three counts, with stealing cattle.[1] In the first count of the first information it was charged that, on July 7, 1945, petitioner, with two others, stole two steers from a Mrs. Bronson; in the second count, two cows; and in the third count, one heifer. The three counts of the other information charged that the same men on July 29, 1945, stole from a Mr. Zipperer a cow and two heifers, each of the animals allegedly stolen being the subject of a separate count. Petitioner was sentenced to serve five years' imprisonment on each count, the terms to be served consecutively, thus making a total of 30 years.

Petitioner did not appeal from his conviction but, in 1949, labeling his petition a writ of error coram nobis, he,

---

[1] "811.11 Horse or cattle stealing

"Whoever commits larceny by stealing any horse, mule, mare, filly, colt, cow, bull, ox, steer, heifer or calf, the property of another, shall be punished by imprisonment in the state prison not less than two years nor more than five years." Fla. Stat. Ann., 1944.

*pro se,* unsuccessfully sought relief. In the same year, also *pro se,* he filed a petition for a writ of habeas corpus in the Supreme Court of Florida claiming that he was confined in violation of the Fifth Amendment to the Federal Constitution because he had been tried on informations rather than on indictments, that the verdict rested on perjured testimony,[2] and that he had been denied a hearing on his petition for a writ of error *coram nobis.* This petition for habeas corpus was denied by the Supreme Court of Florida, without opinion, on the ground that petitioner failed to show probable cause that he was held without lawful authority.

In 1952, with the aid of court-appointed counsel, petitioner filed a petition for a writ of habeas corpus in a Florida Circuit Court. There he claimed that the informations upon which he had been convicted charged the commission of only two, rather than six, offenses and that he already had served sufficient time to satisfy a ten-year sentence which would have been the maximum sentence permissible for two such offenses. Petitioner also charged that his imprisonment was in violation of his rights under the Constitution of the United States. A writ was issued, a return was filed, and the court heard argument of counsel for each side. The writ was quashed. Petitioner appealed to the Supreme Court of Florida, where his appeal was dismissed without opinion.

In 1955, petitioner, again *pro se,* instituted the present proceeding by filing in the Supreme Court of Florida another petition for a writ of habeas corpus. In it he claimed, *inter alia,* that his detention was an "abuse of the Due Process Clause of the 14th Amendment to the Constitution of the United States . . ." and that his con-

---

[2] There was *no* allegation in this or the subsequent petition that the prosecution *knowingly* used perjured testimony as in *Mooney* v. *Holohan,* 294 U. S. 103.

secutive sentences not only violated the Federal and State Constitutions, but were contrary to a recent decision of the Supreme Court of Florida, citing *Hearn* v. *Florida,* 55 So. 2d 559. That petition was argued in the Supreme Court of Florida by counsel for the State, although neither petitioner nor his counsel was present. The petition was denied, without opinion, again on the ground that petitioner failed to show probable cause that he was held without lawful authority.

A rehearing was denied but petitioner's application for a writ of certiorari was granted by this Court, 350 U. S. 872, and counsel was appointed by this Court to represent him here, 350 U. S. 900. The case was fully briefed and argued on the jurisdictional issue as well as on the merits.

The State of Florida has objected consistently to our entertaining jurisdiction of this proceeding. Its reason is that the Florida Supreme Court's denial of the 1955 petition for a writ of habeas corpus may have rested upon one or both of two adequate state grounds. Those grounds are (1) that, under Florida law, the issues presented in 1955 already had been rendered *res judicata* by the 1952 litigation, and (2) that, in any event, petitioner was precluded from raising the federal issues presented in 1955 because he had failed to raise them in comparable prior proceedings where he had a fair and adequate opportunity to do so.

The State's claim as to *res judicata* rests primarily upon Fla. Stat. Ann., 1943, § 79.10, which provides that, while a judgment denying a petition for a writ of habeas corpus remains in force, no person "shall be at liberty to obtain another habeas corpus for the same cause, or by any other proceeding to bring the same matter again in question except by a writ of error or by action of false imprisonment . . . ."

Florida's other state ground is based upon its Supreme Court decisions, and particularly upon *Washington* v. *Mayo,* 77 So. 2d 620, 621. It is there stated that "The rule is clear that a convicted prisoner should not be heard to raise in a subsequent proceeding, whatever its nature, issues that were previously raised and determined, or that the prisoner had a fair and adequate opportunity to raise and have determined in earlier proceedings."

In the face of these expressions of the law of Florida, petitioner, in order to establish our jurisdiction, must demonstrate that neither of these state grounds can account for the decision below. "Where the highest court of the state delivers no opinion and it appears that the judgment *might* have rested upon a nonfederal ground, this Court will not take jurisdiction to review the judgment." *Stembridge* v. *Georgia,* 343 U. S. 541, 547.

> "It is a well established principle of this Court that before we will review a decision of a state court it must affirmatively appear from the record that the federal question was presented to the highest court of the State having jurisdiction and that its decision of the federal question was necessary to its determination of the cause. *Honeyman* v. *Hanan,* 300 U. S. 14, 18; *Lynch* v. *New York,* 293 U. S. 52. And where the decision of the state court might have been either on a state ground or on a federal ground and the state ground is sufficient to sustain the judgment, the Court will not undertake to review it. *Klinger* v. *Missouri,* 13 Wall. 257, 263; *Wood Mowing & Reaping Machine Co.* v. *Skinner,* 139 U. S. 293, 297; *Allen* v. *Arguimbau,* 198 U. S. 149, 154–155; *Lynch* v. *New York, supra.* . . . But it is likewise well settled that if the independent [state] ground was not a substantial or sufficient one, 'it will be presumed that the State court based its judgment on the law

raising the Federal question, and this court will then take jurisdiction.' *Klinger* v. *Missouri, supra,* p. 263; *Johnson* v. *Risk,* 137 U. S. 300, 307; *Lawrence* v. *State Tax Commission,* 286 U. S. 276, 282–283." *Williams* v. *Kaiser,* 323 U. S. 471, 477–478.

While the federal questions relied upon by petitioner in 1955 are not set forth by him as clearly as they might be, we do not rely upon that inadequacy.[3]

Petitioner argues that § 79.10 does not embody the traditionally broad doctrine of *res judicata.* He suggests that the statute bars only the relitigation of questions and matters that have been specifically presented and decided. By thus construing § 79.10, he argues that none of the precise federal issues raised in the 1955 petition were sufficiently raised and considered under his previous petitions. However, the Supreme Court of Florida has treated § 79.10 as applying the general rule of *res judicata.* See *Florida ex rel. Cacciatore* v. *Drumbright,* 116 Fla. 496, 156 So. 721; *Florida ex rel. Williams* v. *Prescott,* 110 Fla. 261, 148 So. 533; *D'Alessandro* v. *Tippins,* 102 Fla. 10, 137 So. 231. It even has applied that doctrine without reference to § 79.10. See *Florida ex rel. Davis* v. *Hardie,* 108 Fla. 133, 146 So. 97. On the other hand, it has, at times, treated habeas corpus petitions as barred by § 79.10 only where the issues have been raised and decided in a prior proceeding. See *Moat* v. *Mayo,* 82 So. 2d 591; *Lee* v. *Tucker,* 42 So. 2d 49; *Pope* v. *Mayo,* 39 So. 2d 286; and

---

[3] The 1955 petition for habeas corpus and the petition for certiorari to this Court were drafted by petitioner. In similar circumstances, this Court has held that "where the substance of the claim is clear, we should not insist upon more refined allegations than [such a person] could be expected to supply." *Tomkins* v. *Missouri,* 323 U. S. 485, 487; *Rice* v. *Olson,* 324 U. S. 786, 791–792; *Holiday* v. *Johnston,* 313 U. S. 342, 350. Florida follows the same practice. *Ex parte Amos,* 93 Fla. 5, 12, 112 So. 289, 292; *Chase* v. *Florida ex rel. Burch,* 93 Fla. 963, 968, 113 So. 103, 106.

compare *Florida ex rel. Williams* v. *Prescott, supra; Florida ex rel. Davis* v. *Hardie, supra.*

In its more recent cases, the Supreme Court of Florida has held that, on an original application for habeas corpus, the petitioner may not raise issues that have been raised in prior proceedings whatever those may have been. Also, that unless he can show good reason for his failure to do so, he is precluded from raising issues which he *could* have raised in any such prior proceedings. *Washington* v. *Mayo,* 77 So. 2d 620; *Irvin* v. *Chapman,* 75 So. 2d 591; *Florida ex rel. Johnson* v. *Mayo,* 69 So. 2d 307.[4] In arguing before us that the issues now raised were or were not raised in prior proceedings, the parties have relied somewhat upon cases from this Court to support their arguments. Those decisions are not squarely in point because

---

[4] While it is true that in the *Johnson* and *Irvin* cases the issues sought to be raised in the habeas corpus proceeding could have been raised on direct appeal, the court held that the writ was not available because the petitioners had failed to raise those issues in "prior proceedings." These included a writ of error *coram nobis* in *Johnson* and a previous trial on the merits in *Irvin.*

It is suggested that the *Washington* case does not preclude this Court from taking jurisdiction because in that case the court, while stating the rule that would preclude jurisdiction, did consider on its merits a nonfederal contention which had not been previously raised. But assuming that the contention so considered had involved a substantial federal question, this Court would have lacked jurisdiction to review the judgment for the reason that it might have rested upon the adequate state ground. For our purposes, therefore, the discussion of the merits in that case may be treated as dicta.

Furthermore, the contention considered on its merits in the *Washington* case "apparently was not raised upon the earlier proceeding . . . ." 77 So. 2d, at 622. In the instant case, the perjury issue was presented in the 1949 petition, although not in terms of a federal constitutional issue. The *Washington* case, therefore, is certainly no authority for a conclusion in the instant case that any issues growing out of the previously raised issue, that the conviction rested upon perjured testimony, could be raised in the proceeding which is before us.

the issue before us is not one of federal law. The issue before us on *res judicata* is whether, under Florida law, petitioner was or was not free to raise in the Supreme Court of Florida in 1955 the questions he attempted to raise there. We conclude that the Supreme Court of Florida *might* have rested its denial of the 1955 petition on the grounds that the several federal issues presented to it in 1955 had been previously raised within the meaning of § 79.10 and, therefore, could not be raised again under the state practice, or at least could have been raised in the prior proceedings and, accordingly, under the above decisions they likewise were not available as a matter of state law.[5]

Petitioner further suggests that, under Florida law, the doctrine of *res judicata* will "not be so rigidly applied as to defeat the ends of justice." *Universal Construction Co. v. Fort Lauderdale,* 68 So. 2d 366, 369. Relying on that case, petitioner argues that the application of *res judicata* is within the discretion of the court, but that case does not provide the necessary authority for that conclusion. In that case, the Supreme Court of Florida, exercising traditional common-law and equitable powers, created an exception to the common-law doctrine of *res judicata* because of an "unusual situation" confronting it. *Id.,* at 370. The question before us is whether, under the facts of this case, the Supreme Court of Florida must necessarily read a similar exception into an Act of the legislature. We find no authoritative basis for doing so.

Finally, it is suggested that the order of the Florida court denying the 1955 petition shows affirmatively that the court decided the petition on the merits of the federal questions raised. We do not so read it. At most it is

---

[5] Our discussion of the Florida law is solely for the purpose of determining whether the test for our jurisdiction is met. We do not intimate that, under that law, petitioner is foreclosed from seeking any further remedial process that may be open to him.

inconclusive and leaves room for a decision on the state grounds indicated in § 79.10 or by *Washington* v. *Mayo, supra.* The language of the order is that petitioner "failed to show . . . probable cause to believe that he is detained in custody without lawful authority . . . ." That is stated in the standard form used in habeas corpus proceedings. We find nothing on its face showing that the court must have decided the case on federal grounds rather than on the readily available and substantial state grounds.

Inasmuch as the Supreme Court of Florida's denial of the 1955 petition *might* have rested on either of the state grounds now suggested by the State, petitioner has failed to establish our jurisdiction to decide the federal issues that he urges upon us. He has not shown that they have been passed upon by the highest court of his State.

For lack of jurisdiction, the case, therefore, must be

*Dismissed.*

MR. JUSTICE DOUGLAS, with whom THE CHIEF JUSTICE, MR. JUSTICE BLACK and MR. JUSTICE CLARK concur, dissenting.

Petitioner is a prisoner in the Florida State Prison, serving a total sentence of 30 years for cattle stealing. In February 1955 he filed a petition for a writ of habeas corpus in the Supreme Court of Florida. That court denied the petition without affording petitioner a hearing and without requiring a response from respondent, the custodian of the prison. A timely motion for rehearing was also denied. We granted certiorari. 350 U. S. 872.

In these circumstances, the allegations of the petition must be accepted as true for purposes of review. See *Hawk* v. *Olson,* 326 U. S. 271, 273; *Williams* v. *Kaiser,* 323 U. S. 471, 473–474. If they are taken as true, we have a shocking case of miscarriage of justice.

In 1945 the County Solicitor for Polk County, Florida, filed two informations charging petitioner and two co-defendants, R. B. Massey, Jr., and Charles Bath, with six offenses of stealing cattle, each information containing three separate counts. The first count of the first information charged that the three defendants on July 7, 1945, stole two steers belonging to Mrs. Edna P. Bronson; the second count charged that the three defendants on July 7, 1945, stole two cows belonging to Mrs. Bronson; and the third count charged that on July 7, 1945, they stole one heifer belonging to Mrs. Bronson. In the second information, the first count charged that the three defendants on July 29, 1945, stole one cow belonging to William C. Zipperer; the second count charged that the three defendants on July 29, 1945, stole one heifer belonging to Mr. Zipperer; and the third count charged that, on the same day, the defendants stole one heifer belonging to Mr. Zipperer. The second and third counts of the second information are virtually identical.

At the trial petitioner asserted his innocence. His two codefendants, however, admitted their guilt and implicated petitioner. Their testimony was the only evidence linking petitioner with the crimes charged. All three were convicted. Bath apparently received a sentence of two years' imprisonment and Massey, 26 years. Petitioner, 53 years old at the time and never before accused of dishonesty, was sentenced to five years' imprisonment on each of the 6 counts, each sentence to be served consecutively, making a total sentence of 30 years. Petitioner, now 63 years old, has served more than 10 years of his sentence.

In May 1949 petitioner, without the assistance of counsel, prepared a petition for writ of habeas corpus and filed it in the Supreme Court of Florida. The petition was inartistically drawn. Petitioner contended that his trial on a bill of information rather than on a grand-

jury indictment violated the Fifth Amendment of the United States Constitution. Secondly, he contended that "he is innocent of said offense and is falsely imprisoned by reason that verdict of guilt was wholly supported by *prejudge* [*sic*] and perjured testimony." Accompanying the petition was an affidavit by one J. E. Croft relating a prison conversation he had with Bath, the codefendant who received the relatively light sentence of two years' imprisonment. According to this affidavit, Bath told Croft that petitioner was completely innocent. Bath described an agreement which he and codefendant Massey had made before they embarked on their cattle-stealing ventures. They agreed that, if they were caught, they would say they were working for petitioner, for whom they had worked as laborers on other occasions. Bath explained that by naming petitioner they had hoped to be "passed up" and given a chance to get out of the country.

In addition to the Croft affidavit, the habeas corpus petition was accompanied by an affidavit signed and sworn to by Massey. He recanted his trial testimony, clearing petitioner of all responsibility for the stolen cattle. Massey stated that his story implicating petitioner "was a falsehood and that I gave such testimony, hoping that it would aid me when my case came up." The affidavit concluded, "Before God is my judge Dan Durley, never had anything to do with any cattle stealing that I testified to at the trial."

The Supreme Court of Florida denied the 1949 petition for a writ of habeas corpus on the ground that petitioner had failed to show probable cause that his detention was unlawful. It should be noted that the 1949 petition did not assert that the use of perjured testimony deprived petitioner of a federal constitutional right.

In January 1952 petitioner filed a second habeas corpus petition in the Circuit Court of Union County, Florida,

this time assisted by court-appointed counsel. He contended that the six 5-year sentences amounted to double jeopardy because the two informations upon which he was convicted charged him in substance with no more than two offenses, each of which carried a maximum penalty of 5 years, and that petitioner had already served sufficient time to satisfy a 10-year sentence. He made a general claim that his imprisonment was "in direct violation of his rights as set out in the Constitution of the United States." There was no mention of the perjured testimony issue. After argument the Circuit Court of Union County quashed the writ. An appeal to the Supreme Court of Florida was dismissed.

The basis of the present litigation is the habeas corpus petition filed in the Florida Supreme Court in February 1955. Petitioner prepared it without the aid of counsel. The petition repeats the double-jeopardy contention as well as the charge that he was convicted solely on the basis of perjured testimony, coupling these allegations with a claim that his imprisonment deprives him of liberty "in violation of his Constitutional Rights afforded him by the State of Florida and the Constitution of the United States of America." His federal constitutional arguments were elaborated in the motion for rehearing. Petitioner's claim that it violates due process to let his conviction stand solely on perjured testimony was raised for the first time in the 1955 habeas corpus petition—the one now under consideration.[1]

The Court dismisses the case on the ground that the Florida Supreme Court order denying habeas corpus might have rested on an adequate state ground—*res judicata*. I disagree.

---

[1] In the 1949 petition, petitioner argued that the testimony was perjured, but he did not present this as a federal question. The 1952 petition did not mention the perjured testimony issue.

The Court concludes that under Florida law petitioner is barred from raising federal issues in the 1955 habeas corpus proceeding because he had raised them or at least had a fair and adequate opportunity to raise them in prior habeas corpus proceedings. The Court strangely relies on *Washington* v. *Mayo,* 77 So. 2d 620. That case involved a habeas corpus petition in which two contentions were raised. The first contention had been expressly raised and decided in a previous habeas corpus proceeding. The second contention, however, had not been raised previously. This contention was decided on the merits by the Florida Supreme Court even though the petitioner "has not shown that he did not have a fair and adequate opportunity to raise and have it determined." *Id.,* at 622.

*Johnson* v. *Mayo,* 69 So. 2d 307, and *Irvin* v. *Chapman,* 75 So. 2d 591, also relied on by the Court, are not in point. In both cases, the Florida Supreme Court held that an issue that could have been raised *on direct appeal from the conviction* could not be litigated in subsequent habeas corpus proceedings.[2] Those cases did not involve the question now before us—whether prior habeas corpus proceedings bar the litigation of issues which could not have been raised on direct appeal from the conviction.[3]

The Florida Supreme Court has expressly dismissed a number of habeas corpus proceedings on the ground that former habeas corpus adjudications were *res judicata.*

---

[2] The Florida Supreme Court stated the rationale of these decisions as follows: "It is elementary that a writ of habeas corpus cannot be used as a substitute for appeal, motion to quash or a motion in arrest of judgment." *Johnson* v. *Mayo,* 69 So. 2d, at 308.

[3] Petitioner's claim of a denial of federal rights because his conviction is based solely on perjured testimony obviously could not have been raised on direct appeal. He did not obtain the affidavits showing that the witnesses had lied until long after the time to appeal his conviction had expired.

But in those cases the habeas corpus petitions attempted to relitigate issues which had been expressly presented and decided in the previous habeas corpus proceedings. See *Moat* v. *Mayo,* 82 So. 2d 591; *Pope* v. *Mayo,* 39 So. 2d 286; *Florida ex rel. Williams* v. *Prescott,* 110 Fla. 261, 148 So. 533.

*Res judicata* is not a rigid doctrine in Florida. The Supreme Court recently refused to apply it where to do so would "defeat the ends of justice." *Universal Const. Co.* v. *City of Ft. Lauderdale,* 68 So. 2d 366, 369.[4] Once the facts alleged by petitioner are conceded, as they must be on the present record, it defeats the ends of justice to deny relief here.

The language of the Florida Supreme Court's order in the present case indicates that petitioner's federal constitutional claims were rejected not on grounds of *res judicata* but on their merits. The petition was denied because of failure to show "probable cause to believe that [petitioner] is detained in custody without lawful authority." Faced with a similar state court order in *Williams* v. *Kaiser,* 323 U. S., at 478, we said: "The denial of the petition on the grounds that it fails to state a cause of action strongly suggests that it was denied because there was no cause of action based on the federal right." We should hold the same in the present case.

Once we reach the merits the answer seems clear. It is well settled that to obtain a conviction by the use of

---

[4] "The basic principle upon which the doctrine of res judicata rests is that there should be an end to litigation and that *'in the interest of the State* every justiciable controversy should be settled in one action in order that the courts and the parties will not be bothered for the same cause by interminable litigation.' 59 So. 2d at page 44; italics supplied. Nevertheless, when a choice must be made we apprehend that the State, as well as the courts, is more interested in the fair and proper administration of justice than in rigidly applying a fiction of the law designed to terminate litigation." 68 So. 2d, at 369.

testimony known by the prosecution to be perjured offends due process. *Mooney* v. *Holohan,* 294 U. S. 103; *Pyle* v. *Kansas,* 317 U. S. 213. While the petition did not allege that the prosecution knew that petitioner's codefendants were lying when they implicated petitioner, the State now knows that the testimony of the only witnesses against petitioner was false. No competent evidence remains to support the conviction. Deprivation of a hearing under these circumstances amounts in my opinion to a denial of due process of law.

Perhaps a hearing on the charges would dispel them. But on the present record, we have a grave miscarriage of justice involving an invasion of federal rights guaranteed by the Fourteenth Amendment.