**UNITED STATES of America ex rel. Cleveland THOMPSON**

**v.**

**Grant F. PRICE, Warden Allegheny County Jail, Pittsburgh, Pennsylvania.**

**Civ. A. No. 16335.**

United States District Court
W. D. Pennsylvania.

Nov. 25, 1957.

Morton B. DeBroff, Pittsburgh, Pa., for petitioner, Cleveland Thompson.

Samuel Strauss, Asst. Dist. Atty., Pittsburgh, Pa., Frank P. Lawley, Jr., Deputy Atty. Gen., for Grant F. Price, Warden.

MARSH, District Judge.

In May, 1956, relator was convicted for the second time on a murder indictment and sentenced to death in the Court of Oyer & Terminer of Allegheny County, Pennsylvania.[1] He now petitions for a writ of habeas corpus, asserting that he was deprived of the due process guaranteed to him under the Constitution of the United States, Const. Amend. 14 for the reason that the trial court admitted into evidence the record of three court martial convictions during the Commonwealth's case in chief.

He contends that admitting the court martial record of crimes disassociated with that for which he was on trial was fundamentally unfair. Further, he prays for a hearing to take testimony in order to institute a collateral attack on the court martial proceedings.

A rule was issued on the Commonwealth to show cause why the writ should not be granted and a hearing held to enable relator to introduce evidence.

At the hearing on the rule the record of relator's trial and the proceedings in the state courts were submitted. The trial record disclosed that the record of the court martial was admitted in evidence over relator's objections, but the penalties were not admitted.[2]

It appears that in 1942, while relator was in England as a member of the armed forces, he had pleaded guilty to one count of felonious shooting with in-

---

1. In January, 1950, relator had been convicted and sentenced to death for the same offense, but a writ of habeas corpus was granted pursuant to the order of the United States Court of Appeals for the Third Circuit without prejudice to the Commonwealth of Pennsylvania to retry the relator. United States ex rel. Thompson v. Dye, 3 Cir., 1955, 221 F.2d 763.

2. In relator's first trial the record of his court martial was admitted in evidence without objection. However, objection was made to admitting the penalties imposed. On appeal, the Supreme Court of Pennsylvania held that there was no harm in admitting the penalties which were part of the record. Commonwealth v. Thompson, 1951, 367 Pa. 102, 79 A.2d 401.

**580**

tent to kill and had been convicted of two other counts of shooting and wounding fellow soldiers with a rifle.

The record also disclosed that by agreement of relator's counsel, an extract of his testimony taken at the first trial on this same indictment was read to the jury. In that testimony he confirmed the fact that in 1942 he had been court martialled in England and disciplined for shooting three soldiers.

It also disclosed that another prior conviction was admitted in evidence without objection. That conviction was obtained in a court of record, namely, in the Criminal Court of Allegheny County, for felonious assault committed in 1940.

■ Since the Act of May 14, 1925, P.L. 759, now part of the Criminal Code of Pennsylvania, 18 Penna.Purdon's Stat. § 4701, a Pennsylvania jury is empowered to fix the penalty in first degree murder. Under the Pennsylvania decisions, admissions of prior offenses, pleas of guilt, and convictions of felonies have been admissible in evidence " * * to enable the jury to know what manner of man the defendant was, if they should find him guilty of murder of the first degree * * *." Commonwealth v. Dague, 1930, 302 Pa. 13, 152 A. 839; see also Commonwealth v. Kurutz, 1933, 312 Pa. 343, 168 A. 28; Commonwealth v. Stabinsky, 1933, 313 Pa. 231, 169 A. 439; Commonwealth v. Rose, 1937, 327 Pa. 220, 193 A. 17. This limited purpose was carefully explained to the jury by the trial judge.

Upon relator's appeal from his second conviction, the Supreme Court of Pennsylvania upheld the admissibility of the court martial record as a proper aid to the jury in fixing the penalty. Commonwealth v. Thompson, 389 Pa. 382, 133 A.2d 207.

At the argument on the rule, the Commonwealth contended that in the light of the trial record and proceedings in the state courts, pure questions of law had been presented by relator's petition for the writ, and that a hearing would be time-consuming and superfluous.

Upon inquiry, counsel for the relator stated that he desired a hearing in order to introduce: (1) the transcript of the court martial, which he does not now have; (2) the testimony of Thompson concerning the events that transpired at the court martial; (3) the testimony of the three soldier victims who had allegedly been shot and wounded by relator in England and who had testified before the court martial; (4) the testimony of the officer who defended relator at the court martial; (5) testimony of experts on court martials, in order to show that a court martial is not a court of record but is only an administrative tribunal whose findings are rendered without due process and not entitled to recognition in courts of law.

It is the conclusion of the court that the petition for the writ should be dismissed.

■ The introduction in evidence of the prior conviction by court martial, over relator's objection, as distinguished from the prior conviction by a court of record, to which he did not object, presents a question of admissibility of evidence under state law, which, without more, is not a federal question. United States ex rel. Langer v. Ragen, 7 Cir., 1956, 237 F.2d 827. Especially do we think a federal court may not review the correctness of the ruling of the trial court on this question, when it has been affirmed on appeal by the highest state court.[3]

■■ Where the alleged error of the trial court is in the admission of evidence, and relator is represented by competent counsel, habeas corpus is not an appropriate remedy and it can not be a substitute for appeal. Schechter v. Waters, 10 Cir., 1952, 199 F.2d 318;

3. Federal courts have held that judgments of military tribunals are essentially synonymous with "convictions" in civil courts. Grafton v. United States, 1907, 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084; Gubbels v. Del Guercio, D.C.S.D.Cal. 1957, 152 F.Supp. 277.

Smith v. United States, 1950, 88 U.S. App.D.C. 80, 187 F.2d 192; Curran v. Shuttleworth, 6 Cir., 1950, 180 F.2d 780; Morton v. Steele, 8 Cir., 1950, 179 F.2d 956; McMullen v. Squier, 9 Cir., 1944, 144 F.2d 703; Wilhoit v. Hiatt, D.C.M.D. Pa.1945, 60 F.Supp. 664; cf. United States ex rel. Brogan v. Martin, 3 Cir., 1956, 238 F.2d 236. Trial errors, even though serious, may not be reviewed by habeas corpus unless involving jurisdiction of the court or " * * * deprivation of Constitutional rights amounting to a denial of the essence of a fair trial * * *." Meyers v. United States, 1950, 86 U.S.App.D.C. 320, 181 F.2d 802, 803; Odell v. Hudspeth, 10 Cir., 1951, 189 F.2d 300.

However, relator does strenuously contend that the Pennsylvania decisions authorizing the admission in evidence of prior crimes, disassociated with that for which he was being tried, constitutes fundamental unfairness in violation ˜of the due process clause.

■■ We are of the opinion that this contention is devoid of substantial merit for the following reasons.

First, relator makes this contention even though he failed to object to the admission of his conviction of a prior felony in the Criminal Court of Allegheny County introduced for the same purpose as the court martial record, and despite his agreement, through competent counsel, to the admission in evidence of his prior testimony confirming the fact of his conviction by court martial for the felonious shootings in England.

Second, he failed to affirmatively assert this constitutional contention at his trial, in his motion for a new trial, or in his brief filed with the Supreme Court of Pennsylvania. He did assert it in his petition for certiorari in the Supreme Court of the United States. The opinions of the court en banc denying his motion for a new trial and the Pennsylvania Supreme Court's affirmance of his conviction do not reflect any considera-

tion of the question in the light of the due process clause. Without decision, we entertain considerable doubt that he has exhausted his state remedies in this respect. Cf. Durley v. Mayo, 1956, 351 U.S. 277, at page 281, 76 S.Ct. 806, at page 809, 100 L.Ed. 1178; Meeks v. Lainson, 8 Cir., 1956, 236 F.2d 395, at page 397.

■ Third, the introduction of such evidence has been established as approved procedure and policy in Pennsylvania for 30 years in opinions [4] written by a long line of distinguished justices of the Pennsylvania Supreme Court; not always unanimous, however. See the dissenting opinions in Commonwealth v. Thompson, 1957, 389 Pa. 382, 405, 133 A.2d 207, 219, and Commonwealth v. DePofi, 1949, 362 Pa. 229, 249, 66 A.2d 649, 658.

Even though recognizing the impelling merit of these dissents, in view of the authoritative Pennsylvania background, we cannot say that the long declared policy expressed in the many decisions of the Pennsylvania Supreme Court " 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " Brown v. State of Mississippi, 1936, 297 U.S. 278, 285, 56 S.Ct. 461, 80 L.Ed. 682.

As stated by the Supreme Court of the United States in Snyder v. Commonwealth of Massachusetts, 291 U.S. 97, at page 122, 54 S.Ct. 330, at page 338, 78 L.Ed. 674:

"The Constitution and statutes and judicial decisions of the Commonwealth of Massachusetts are the authentic forms through which the sense of justice of the people of that commonwealth expresses itself in law. We are not to supersede them on the ground that they deny the essentials of a trial because opinions may differ as to their policy or fairness."

---

4. See collection of these cases in Commonwealth v. Thompson, 1957, 389 Pa. 382, 399, 133 A.2d 207, 216.

582

We hold that relator was accorded due process.

 Passing on to relator's request to initiate a collateral attack on the merits of his court martial conviction by introducing into evidence the transcript and the testimony of the principals involved, it is plain that this request must be denied. Since relator did not institute in the state courts a collateral attack on the merits of the military conviction and failed to offer such evidence at his trial, he has not exhausted his state remedies in that respect. It appears that the state courts passed only on the admissibility of the court martial record in evidence; they have never been given the opportunity to pass upon the merits of the court martial conviction itself. It seems that the relator, without disclosing what the proposed evidence will reveal, desires this court to retry the military accusations, find that the convictions were erroneous, declare that the record thereof was a nullity and then hold that its admission in evidence at his murder trial violated the due process clause.

Absent a showing of exceptional circumstances or peculiar urgency, relator cannot offer evidence in a federal district court attacking the merits of his court martial conviction until that specific issue has been first presented to the state courts. Durley v. Mayo, supra; United States ex rel. Ackerman v. Johnston, D.C. W.D.Pa.1955, 139 F.Supp. 890, affirmed 3 Cir., 1956, 235 F.2d 958; United States v. Ragen, supra; Meeks v. Lainson, supra. "It is axiomatic that the state courts are as much the guardians of the federal constitutional rights of its prisoners as are the federal courts." Wiggins v. Ragen, 7 Cir., 1956, 238 F.2d 309, at page 313.

The Pennsylvania Supreme Court, citing eminent authority, made it quite clear that the decisions of court martials could not be attacked collaterally in the civil courts " * * * except to determine whether a court-martial had jurisdiction or whether it exceeded its powers; the guilt or innocence of the defendants cannot be inquired into." [5]

From this dictum,[6] relator without doubt would argue that it would be useless for him to now institute in the state courts a collateral attack on the merits of his military conviction. Without deciding whether it is or is not, it is to be emphasized that the basis of our decision on this issue is that he cannot first do in a federal court that which he failed to do or attempt in the state courts.

An order will be entered dismissing the petition.

---

5. Commonwealth v. Thompson, 389 Pa. 382, 402, 133 A.2d 207, 218.

6. Ibid. The court stated: "No collateral attack on this [court martial] conviction has been made."