**UNITED STATES ex rel. Louis CUOMO, Relator-Appellant,**

v.

**Edward M. FAY, Warden of Green Haven Prison, and The People of the State of New York, Respondents-Appellees.**

No. 387, Docket 24915.

United States Court of Appeals Second Circuit.

Argued June 3, 1958.

Decided July 11, 1958.

George M. Vetter, Jr., New York City, for relator-appellant.

George K. Bernstein, Deputy Asst. Atty. Gen., State of New York (Louis J. Lefkowitz, Atty. Gen., Paxton Blair, Solicitor Gen., and Samuel A. Hirshowitz, Asst. Solicitor Gen., State of New York, New York City, on the brief), for respondents-appellees.

Before HINCKS, PICKETT and MOORE, Circuit Judges.

HINCKS, Circuit Judge.

The sole question presented upon this appeal is whether the relator has exhausted his remedies under the law of New York as required by 28 U.S.C.A. § 2254.[1] The District Court held that he had not but, recognizing that the ques-

---

1. Title 28 U.S.C.A.

"§ 2254. *State custody; remedies in State courts*

"An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

"An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."

tion was one of some difficulty, granted relator a certificate of probable cause, 28 U.S.C.A. § 2253, and leave to appeal *in forma pauperis*. We assigned counsel to present the appeal.

The facts controlling the exhaustion question are undisputed. On October 29, 1953, the appellant pleaded guilty in Kings County court to the crime of robbery in the first degree. At the time of the plea, while represented by an attorney, Nathan Schor, the following transpired:

"By the Court:

"Q. Louis Cuomo, do you understand what Mr. Schor is saying. He is offering to plead you guilty to Robbery in the First Degree. By that plea you admit that on October 8th with a gun you held up a gasoline station in which there was Mr. Harry Lau and Mr. Basileo?

"It is our understanding that this plea is accepted with the understanding that you will go over to the district attorney's office and discuss this case and other cases with them and if the district attorney is satisfied that you have been helpful, that he will consent to reduce the plea to at least Robbery Second Degree and, perhaps, lower, depending on the amount of help you give him. Are you guilty of that crime? A. Yes.

"Q. You want to plead guilty? A. Yes.

"The Court: Plea is satisfactory to the Court and the District Attorney.

"Clerk Medwon: Louis Cuomo, do you now in the presence of your attorney, Mr. Nathan R. Schor, who stands besides you, wish to withdraw your plea of not guilty heretofore entered and you now wish to plead guilty to the crime of Robbery, First Degree to cover all counts of the indictment, do you?

"The Defendant Cuomo: Yes."

Apparently these conversations were fruitless and no recommendation to reduce the plea was made. Before sentence, on November 19, 1953, a request was made to withdraw the plea of guilty, which was denied. Relator was then sentenced as a third offender to a term of 15 to 20 years. No appeal was taken from the conviction or sentence, or denial of the motion to withdraw the plea.

On May 6, 1954, relator sought a writ of error *coram nobis* in the sentencing court. The writ was dismissed after a hearing and no appeal was taken.

On September 22, 1954, relator applied to the New York Supreme Court, Dutchess County, for a writ of *habeas corpus*. On October 18, 1954, a hearing was held on the writ but the relator stated that because of "certain reasons" he was unable to go forward. It is asserted that during this period his legal papers were taken from him and he was unable to prepare for the hearing. The writ was dismissed on November 18, 1954 and no appeal was taken. On August 23, 1955, the relator moved to dismiss the respondent's return to the writ of *habeas corpus* —the very writ which had been denied almost a year before. This motion was denied on October 28, 1955. On November 11, 1955, relator appealed to the Appellate Division from this denial and a few days later requested that he be allowed to proceed with the appeal *in forma pauperis*. On January 9, 1956, the Appellate Division denied leave to proceed *in forma pauperis* on a typed record and typed brief. The relator then petitioned the Supreme Court for a writ of certiorari but the application was denied on May 21, 1956, 351 U.S. 942, 76 S.Ct. 841, 100 L.Ed. 1468. A few days later the State of New York moved in the Appellate Division to dismiss the relator's appeal. This motion was denied on condition that the relator perfect his appeal in the normal course in time to be heard at the October 1956 term of the Appellate Division. The relator filed a "notice of motion to perfect the appeal" and also requested oral argument. But after being informed by the clerk of the Appellate Division that, leave to appeal on typed papers having been denied, he must print all his papers, he took no

further action and his appeal in the Appellate Division was dismissed for failure to prosecute, on December 21, 1956.

Relator has filed successively four petitions for writs of *habeas corpus* in the Southern District of New York all of which were dismissed for lack of exhaustion of State remedies. The instant application was dismissed by Judge Palmieri, who noted that nothing had happened since the previous dismissal by Judge Sugarman, 148 F.Supp. 814, except that on March 14, 1957 the sentencing court in Kings County had denied another request for a writ of error *coram nobis*.

■ As we have had occasion to hold recently, United States ex rel. Kozicky v. Fay, 2 Cir., 248 F.2d 520, certiorari denied 356 U.S. 960, 78 S.Ct. 997, 2 L.Ed.2d 1067, not every application to the Supreme Court for a writ of certiorari exhausts a prisoner's State remedies. In that case, a conviction was affirmed by the New York Appellate Division. No appeal was taken from that affirmance though later a motion was made in the Appellate Division for reargument. The motion was denied; leave to appeal from the denial of reargument to the New York Court of Appeals was denied for lack of jurisdiction and a petition for a writ of certiorari was also denied. 352 U.S. 896, 77 S.Ct. 134, 1 L.Ed.2d 88. We held that the motion for reargument did not raise the issues sought to be adjudicated in the *habeas corpus* proceedings in the federal courts and thus the denial of certiorari could not be considered to exhaust an available remedy.

■ This is not to say that before *habeas corpus* lies in the federal courts a State court must rule on the merits of the prisoner's contentions. It is enough if the prisoner, pursuant to a proper procedure, place before the State courts an opportunity to adjudicate his federal claim upon the merits. United States ex rel. Sproch v. Ragen, 7 Cir., 246 F.2d 264, 266–267. Cf. Durley v. Mayo, 351 U.S. 277, 76 S.Ct. 806, 100 L.Ed. 1178, and Meeks v. Lainson, 8 Cir., 236 F.2d

395, certiorari denied 352 U.S. 931, 77 S.Ct. 233, 1 L.Ed.2d 166, where the State court decisions "might" have rested on adequate State grounds and there was no showing the federal claims had been considered. Conversely, if the prisoner presents his claim on the merits by an improper procedure or in conjunction with State claims, exhaustion will be deemed to have occurred if a State court in fact passes on the merits of the federal claim since the purpose of the exhaustion requirement—giving the State an opportunity to correct any federal violations before federal intervention—has been attained. Darr v. Burford, 339 U.S. 200, 203 et seq., 70 S.Ct. 587, 94 L.Ed. 761.

■ Generally, once a State court has been properly presented with the merits the prisoner must follow the proper State appellate procedure and then petition the Supreme Court for a writ of certiorari. Darr v. Burford, supra. In certain "special circumstances" exhaustion is not required before a federal court will consider the merits of the prisoner's claim. Frisbie v. Collins, 342 U.S. 519, 521–522, 72 S.Ct. 509, 96 L.Ed. 541. This imports that exhaustion is not a jurisdictional requirement but is rather a legislative policy born of considerations of comity. And where the State courts lack power to waive filing fees, a poor person need not attempt to comply with the State appellate procedure before invoking the aid of the federal courts. United States ex rel. Embree v. Cummings, 2 Cir., 233 F.2d 188. But in New York, where the Appellate Division has power to waive the filing fee in meritorious cases, when an application *in forma pauperis* is denied by that court, as it was in the instant case, the normal appellate procedure must be followed with an ultimate application to the Supreme Court for a writ of certiorari—except that the New York Court of Appeals may be bypassed since that court will not review a denial by the Appellate Division of leave to appeal *in forma pauperis*. United States ex rel. Marcial v. Fay, 2 Cir., 247 F.2d 662, cer-

tiorari denied 355 U.S. 915, 78 S.Ct. 342, 2 L.Ed.2d 274; United States ex rel. Roosa v. Martin, 2 Cir., 247 F.2d 659. See also United States ex rel. Sproch v. Ragen, supra, 246 F.2d at page 266.

Section 2254, though not explicit on the point, has been interpreted to require that the prisoner need follow but one proper procedure to raise the merits of his alleged federal question in the State courts. Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469; United States ex rel. Alvarez v. Murphy, 2 Cir., 246 F.2d 871. Lastly, the burden is upon the relator to convince the federal courts that he has exhausted his State remedies. Thompson v. Overlade, 7 Cir., 216 F.2d 492; Buchanan v. O'Brien, 1 Cir., 181 F.2d 601.

It is with these basic considerations in mind that we approach the present appeal. The only procedure in the case at bar which could possibly amount to exhaustion is that concerning the relator's motion to quash the respondent's return to the relator's writ of *habeas corpus*. We are not informed of the issues which this motion raised. But, more than this, it is undisputed that this motion was not made until almost a year after the writ of *habeas corpus* was dismissed. Thus that appeal involved not the merits of the relator's writ but only the question of the propriety of the lower court's refusal to quash a return to a writ which had been dismissed almost a year earlier. Plainly, relator's motion was nugatory—as much so as a motion to strike a pleading a year after the moving party has lost the case. We think this situation closely approaches that illustrated by the Kozicky case, supra, in which the State appellate procedure was invoked not to present the merits of a federal question but only on an incidental procedural issue.

One further obstacle confronts the relator. It is clear under the New York cases that relator's proper remedy for asserting his claim of fraud and trickery is through a writ of error in the nature of *coram nobis* and not *habeas corpus*.[2] Morhous v. Supreme Court of New York, 293 N.Y. 131, 56 N.E.2d 79; Lyons v. Goldstein, 290 N.Y. 19, 47 N.E.2d 425, 146 A.L.R. 1422. And although the lower State court entertained the *habeas* writ and held a hearing and the Appellate Division allowed the relator time to go forward *pro se* in the regular course, it does not necessarily follow—and we cannot assume—that these courts considered the writ of *habeas corpus* (or even the limited issue of the denial of the motion to quash) on the merits. Invocation of an improper remedy will suffice as an exhaustion only on a clear indication that the federal question was considered on the merits. Durley v. Mayo, supra.

In summary, the relator has failed to meet his burden of showing that he previously raised the merits of the federal question which he now seeks to present to us through the proper appellate procedure of the State of New York. Also, even if he did present to the State courts the issue as to the merit of his federal claim, since he did so through an improper post-conviction procedure, his failure to show that the State courts considered the federal question on the merits is fatal. Lastly, the relator has shown no compelling reason why we should consider the merits of his claim before he has exhausted his State remedies. Cf. Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541. For these reasons, we conclude, the disposition below was correct.

We wish to express our gratitude to Mr. George M. Vetter, Jr., of the New

2. Under New York procedure a writ of error *coram nobis*, like a motion under 28 U.S.C.A. § 2255 in the federal system, must be addressed to the sentencing court, N.Y.Code Crim.Proc. § 684, People v. Chase, 286 App.Div. 936, 142 N.Y.S.2d 632, while a writ of *habeas corpus* is addressed, as it is in the federal system, to the court having jurisdiction of the place of confinement. N.Y.Civ. Prac.Act, § 1239, subd. 3.

York Bar who has ably discharged his assignment by this court to represent the relator on this appeal.

Affirmed.