COMMONWEALTH of Kentucky,
Appellant,

v.

Marcellus SPAULDING, Appellee.

No. 97–SC–883–DG.

Supreme Court of Kentucky.

April 22, 1999.

As Amended June 28, 1999.

A.B. Chandler, III, Attorney General, Amy F. Howard, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, KY, for appellant.

Wallace N. Rogers, Mulhall, Turner, Hoffman & Coombs, P.L.L.C., Louisville, KY, for appellee.

JOHNSTONE, Justice.

Appellant, Marcellus Spaulding, was convicted of first-degree manslaughter and pled guilty to a charge of first-degree persistent felony offender. He was sentenced to a total of thirty years in prison. His conviction and sentence were affirmed by this Court in an unpublished opinion rendered on July 30, 1992. *Spaulding v. Commonwealth*, Ky., 91–SC–0759–MR (1992). Subsequently, the Court of Appeals overturned Spaulding's conviction on an appeal from a denial of a new trial pursuant to CR 60.02. The Commonwealth appeals from that decision. We reverse.

On May 23, 1990, Spaulding stabbed Nathaniel Hayes in the heart and killed him. Thereafter, Spaulding was indicted on one count of murder and one count of being a persistent felony offender in the first degree.

At Spaulding's first trial, which ended in a mistrial, the Commonwealth called Jack Garner as a witness. Garner testified that the victim, Hayes, had "run into" the knife that Spaulding was holding. This testimony was contrary to what the Commonwealth expected. The prosecutor attempted to impeach Garner with a contrary statement he made to the police on the night of Hayes's death. However, Garner denied having made the previous statement because he was drunk that night and could not remember what he told police. He stuck with his story that Hayes had "run into" the knife held by Spaulding.

The Commonwealth again called Garner as a witness at Spaulding's second trial. Contrary to his previous testimony, Garner testified that Spaulding drew a knife, swung it at Hayes, and stabbed him in the chest. On cross-examination, Spaulding's attorney attempted to impeach Garner by asking him if he I remembered his testimony in the previous trial that Hayes had run into the knife held by Spaulding. Garner stated that he did not remember so testifying.

Spaulding testified that he stabbed Hayes in self-defense because Hayes and Garner were "ganging" him. The Commonwealth presented eighteen other witnesses in addition to Garner. Six of those witnesses were close to the scene and testified to the circumstances and events that occurred immediately before and after the stabbing. However, Garner was the only witness to the actual stabbing.

The jury found Spaulding guilty of manslaughter in the first degree. Thereafter, Spaulding entered a guilty plea to the first-degree persistent felony offender charge. He was sentenced to a total of thirty years' imprisonment. The final judgment of conviction was entered on August 27, 1991.

On September 6, 1991, Spaulding filed his direct appeal to this Court. On January 28, 1992, Spaulding filed a RCr 11.42 motion alleging ineffective assistance of counsel and prosecutorial misconduct. The latter allegation consisted of charges that the prosecutor at the second trial breached her duty to correct perjured testimony. The RCr 11.42 motion was denied on June 12, 1992.

On July 23, 1992, Spaulding sent a letter to the Jefferson County Commonwealth Attorney's Office asking that it investigate charges of perjury regarding Garner's conflicting testimony during the two trials. Sometime later, Spaulding's attorney took out a warrant against Garner for perjury and the Commonwealth Attorney began proceedings against Garner.

On July 30, 1992, this Court rendered an opinion affirming Spaulding's conviction on direct appeal. Spaulding then filed a CR 60.02 motion on August 18, 1992, in which he again alleged the same charge of prosecutorial misconduct as was raised in his RCr 11.42 motion. The motion was denied by the trial court on November 19, 1992.

Spaulding appealed to the Court of Appeals and on July 22, 1994, the Court of Appeals rendered an opinion affirming the denial of Spaulding's RCr 11.42 and CR 60.02 motions.

On July 23, 1995, Garner pled guilty to first-degree perjury in violation of KRS 523.020. Specifically, he was adjudged guilty of the following charge contained in the indictment:

> That on or about the 23rd day of July, 1991, in Jefferson County, Kentucky, the above named defendant, Jack Garner, committed the offense of *PERJURY IN THE FIRST DEGREE* by falsely testifying while under oath during trial of the case of Commonwealth of Kentucky v. Marcellus Spaulding in the Jefferson Circuit Court to the effect that the Defendant in that case was swinging a knife at the victim, having previously testified during trial of the case of Commonwealth of Kentucky v. Marcellus Spaulding on March 5, 1991, that the victim ran into the knife and that he did not see Defendant Spaulding swing a knife at the victim.

*Commonwealth v. Garner,* No. 94–CR–1490 (indictment against defendant).

On August 15, 1995, Spaulding filed a second CR 60.02 motion based on Garner's conviction for committing perjury during Spaulding's second trial. The motion was made pursuant to CR 60.02(b), (c) & (f). The trial court first denied the motion. Thereafter, the trial court granted Spaulding's motion to reconsider, held a hearing on the motion, and granted him a new trial. Then, upon the Commonwealth's motion to reconsider, the trial court again denied Spaulding's motion.

In its final ruling on the motion, the trial court found: (1) Spaulding was collaterally estopped from raising the perjury issue; (2) the motion was procedurally time barred; and (3) "even absent Garner's testimony, the weight of evidence presented was clearly sufficient to support [Spaulding's] conviction on Manslaughter I." The Court of Appeals determined that the fact

of an actual conviction for perjury was qualitatively different than an allegation of perjury and concluded that the trial court erred on all three grounds. It then reversed the trial court and remanded the case for a new trial.

### COLLATERAL ESTOPPEL

■ Spaulding charged prosecutorial misconduct in his RCr 11.42 and his first CR 60.02 motion, based on the allegation that the prosecutor failed to correct perjured testimony at trial. "In order to establish prosecutorial misconduct ..., the defendant must show (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *United States v. Lochmondy,* 890 F.2d 817, 822 (6th Cir.1989).

■ However, the issue before us in the instant case is whether the introduction of perjured testimony, obtained without the knowledge of the prosecutor, entitles Spaulding to a new trial under CR 60.02(c). This use of perjured testimony is treated like newly discovered evidence for the purposes of CR 60.02. *Cf. Mullins v. Commonwealth,* Ky., 375 S.W.2d 832, 834 (1964); *see also North Dakota v. Thiel,* 515 N.W.2d 186, 188 (N.D.1994). "[I]n order for newly discovered evidence to support a motion for new trial it must be 'of such decisive value or force that it would, with reasonable certainty, have changed the verdict or that it would probably change the result if a new trial should be granted.'" *Jennings v. Commonwealth,* Ky., 380 S.W.2d 284, 285–86 (1964), quoting *Ferguson v. Commonwealth,* Ky., 373 S.W.2d 729, 730 (1963). And, of course, the defendant has the additional burden of showing within a reasonable certainty that perjured testimony was in fact introduced against him at trial. *Anderson v. Buchanan,* Ky., 292 Ky. 810, 168 S.W.2d 48, 54 (1943).

■ Because Spaulding's original motion charged prosecutorial misconduct at his second trial, whereas the charge in the

motion at issue in the instant case does not contain an allegation of prosecutorial misconduct, we conclude that Spaulding is not collaterally estopped from bringing his motion. "Collateral estoppel, or issue preclusion, ... serves to prevent parties from relitigating issues necessarily determined in a prior proceeding." *Gregory v. Commonwealth,* Ky., 610 S.W.2d 598, 600 (1980).

The trial court issued a blanket denial of Spaulding's original motions, which could have been made on grounds that there was no showing that the prosecutor knew that Garner's testimony was false. *See Lochmondy,* 890 F.2d at 822 (inconsistent statements are not sufficient to charge the prosecution with knowledge of perjury). Thus, the issues of whether Garner's testimony was false and whether the testimony was material were not necessarily determined in the trial court's denial of the motions. Further, the Court of Appeals, on procedural grounds, did not reach Spaulding's argument that the prosecutor failed to correct perjured testimony. *Spaulding v. Commonwealth,* Ky.App., 92–CA–002924–MR at 9 (rendered Feb. 8, 1995).

This leads to the inescapable conclusion that the precise issue in this case was raised for the first time in Spaulding's second CR 60.02 motion, *accord Sanders v. Sullivan,* 863 F.2d 218, 221 (2nd Cir.1988), which was approximately four years after the judgment and sentence became final.

### WHETHER THE MOTION IS PROCEDURALLY TIME BARRED

■ Pursuant to CR 60.02, a motion for relief from judgment made under the rule grounded on allegations of perjury, must be brought not more than one (1) year after entry of the judgment. Spaulding attempts to escape this time limitation by arguing that the fact of Garner's conviction of perjury constitutes a "reason of an extraordinary nature justifying relief" within the meaning of CR 60 .02(f). What constitutes a reason of extraordinary nature is left to judicial construction.

■ "Civil Rule 60.02 ... abolishes the 'writ of coram nobis,' and authorizes the granting of this type of relief by motion made under that Rule." *Harris v. Commonwealth,* Ky., 296 S.W.2d 700, 702 (1956). Further, we stated, "... CR 60.02 does not extend the scope of the remedy nor add additional grounds of relief." *Id .* Thus, we conclude that a CR 60.02(f) is a catch-all provision that encompasses those grounds, which would justify relief pursuant to writ of coram nobis, that are not otherwise set forth in the rule. *See Brown v. Commonwealth,* Ky., 932 S.W.2d 359, 361 (1996); *see also Anderson,* 168 S.W.2d at 52–53 (the writ of coram nobis is part of the Commonwealth's "due course of law" protected by Ky. Const.Sec. 14.).

■ "The writ of coram nobis is an extraordinary remedy which will issue for the judicial correction of a wrong committed in the administration of criminal justice resulting in the deprivation of life or liberty without due process of law." *Merrifield v. Commonwealth, ex rel. Buckman,* Ky., 283 S.W.2d 214, 215 (1955). Thus, if the introduction of perjured testimony at Spaulding's second trial amounted to a denial of due process of law, then his motion is properly brought under CR 60.02(f) and is subject to a reasonable time limit rather than a one-year time limit. The resolution of this question turns on the more general issue of whether a conviction based on perjured testimony rises to the level of a denial of due process of law in the Commonwealth.

■ We begin by noting that the deliberate introduction of perjured testimony by a prosecutor "is incompatible with the rudimentary demands of justice." *Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104, 108 (1972) (internal quotation marks omitted). The same is true if a prosecutor, though not soliciting it, allows perjured testimony to go uncorrected. *Id.* When the perjured

testimony could "in any reasonable likelihood have affected the judgment of the jury," the knowing use by the prosecutor of perjured testimony results in a denial of due process under the Fourteenth Amendment and a new trial is required. *Id.* at 153, 92 S.Ct. at 766, 31 L.Ed.2d at 108. However, there is a split of authority as to whether the unknowing use of perjured testimony can create a denial of due process.

In 1938, the Sixth Circuit Court of Appeals determined that there was no distinction between the two situations, and held that a conviction based on perjured testimony was a denial of due process of law regardless of whether the prosecution knew the testimony was false. *Jones v. Kentucky,* 97 F.2d 335, 338 (6th Cir.1938). However, the Sixth Circuit later limited *Jones* to the facts of the case. *Burks v. Egeler,* 512 F.2d 221, 229 (6th Cir.1975), *cert. denied* 423 U.S. 937, 96 S.Ct. 297, 46 L.Ed.2d 270 (1975). The *Burks* court held that the introduction of perjured testimony at trial, which is unknown to the prosecutor, is not a violation of due process under the Fourteenth Amendment, and, thus, was not reviewable on a writ of habeas corpus. *Id.* at 230. The basis for this holding is that the use of perjury, which is not known and is unknowable to the prosecution, does not involve state action. *Id.* at 225–26.

This argument was considered and rejected in *Sanders v. Sullivan, supra.*

> In our view, this criticism is unpersuasive. There is no logical reason to limit a due process violation to state action defined as prosecutorial knowledge of perjured testimony or even false testimony by witnesses with some affiliation with a government agency. Such a rule elevates form over substance. It has long been axiomatic that due process requires us "to observe that fundamental fairness essential to the very concept of justice." *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 290, 86 L.Ed. 166 (1941). It is simply intolerable in

our view that under no circumstance will due process be violated if a state allows an innocent person to remain incarcerated on the basis of lies. A due process violation must of course have a state action component. We believe that Justice Douglas accurately articulated the appropriate definition that accords with the dictates of due process: a state's failure to act to cure a conviction founded on a credible recantation by an important and principal witness, exhibits sufficient state action to constitute a due process violation. See *Durley v. Mayo,* 351 U.S. 277, 290–91, 76 S.Ct. 806, 813–14, 100 L.Ed. 1178 (1956).

*Sanders,* 863 F.2d at 224.

Kentucky law is in accord with the *Sanders* case. This issue was addressed in *Anderson v. Buchanan, supra.* In discussing the import of the Sixth Circuit's opinion in *Jones v. Kentucky, supra,* we noted:

> [I]t seems to us the Supreme Court does not go quite so far in its consideration as some of the language of the [Sixth] Circuit Court of Appeals would indicate the courts should go. The Supreme Court's view seems to be that alleged perjured testimony upon which conviction was had must have been by the active conduct or the connivance of the prosecuting officers.

*Anderson,* 168 S.W.2d at 52.

Nonetheless, the *Anderson* court held:

> that the court in which a conviction was had has discretion to grant the writ [of coram nobis] where it appears that but for the alleged false testimony ... of such a conclusive character that the verdict most probably would not have been rendered and there is a strong probability of miscarriage of justice unless the process be granted. We affirm that it is not enough to merely show that a prosecuting witness has subsequently made contradictory statements or that he is willing to swear that his testimony upon the trial was false, for his later oath is

no more binding than his former one. It may be otherwise if the sole witness repudiates his testimony. It is to be emphasized also that obtaining the writ is not a matter of right but the granting of it is a matter of sound judicial discretion to be exercised upon a showing of reasonable certainty.

*Id.* at 53–54 (internal citations omitted).

Further, the *Anderson* court emphasized that the "question of the guilt or innocence of the accused is not a necessary subject of the inquiry. The question embraces the genuineness and good faith of the repudiation or newly discovered evidence and the probability that the conviction would not have resulted if the truth had been revealed." *Id.* at 54. Thus, the integrity of the judicial process was of overriding concern to the *Anderson* court.

Finally, important to the *Anderson* court's analysis was its affirmation that the writ of coram nobis is part of the Commonwealth's "due course of law" as protected by Ky. Const.Sec. 14. *Id.* at 52–53.

■ Thus, we conclude that in the appropriate case the introduction of perjured testimony, which is not known as such by the prosecutor, can result in a violation of the right to due course of law and the right to due process of law as provided by the Kentucky and United States Constitutions. Thus, we hold that a criminal conviction based on perjured testimony can be a reason of an extraordinary nature justifying relief pursuant to CR 60.02(f) and subject to the reasonable time limitation of the rule. Of course, the burden remains on the defendant to show both that a reasonable certainty exists as to the falsity of the testimony and that the conviction probably would not have resulted had the truth been known before he can be entitled to such relief.[1] In this case, Gar-

ner's conviction for perjury clearly rises to the level of reasonable certainty as to the falsity of his testimony in Spaulding's second trial. However, the materiality of the testimony is not so certain.

## ABUSE OF DISCRETION

■ The trial court found that, even absent Garner's testimony, the weight of the evidence was clearly sufficient to support Spaulding's conviction for Manslaughter I. However, the test for whether perjured testimony entitles a defendant to a new trial, focuses on whether there is a probability that introduction of the truth "would, with reasonable certainty, have changed the verdict or that it would probably change the result if a new trial should be granted ." *Jennings,* 380 S.W.2d at 284. Thus, at first blush, it appears that the trial court used the wrong test. However, there is nothing in the record to indicate that Garner's testimony at Spaulding's first trial was necessarily truthful. Thus, the trial court was not required to apply the *Jennings* test.

We have been presented with Garner's conviction for committing perjury at Spaulding's second trial. However, we have not been presented with any proof, evidence, or credible argument that Garner testified truthfully at Spaulding's first trial. All we have is the fact that Garner's testimony at the first trial was directly contradictory to his perjured testimony at the second trial. We know of no rule of law, logic, or nature that dictates that as between two contradictory statements, one of them must be true. In fact, the law indicates the opposite is true. The *Anderson* court stated that neither contradictory statements by a witness nor a sworn statement by the witness that he lied at trial is sufficient to establish perju-

1. Note that the second part of this test places a heavier burden on the defendant than does the test used when perjured testimony is introduced with knowledge or acquiescence of the prosecution. In the latter situation, the relevant test is "whether there exists any rea-

sonable likelihood that the false testimony could have affected the judgment of the jury under the evidence as a whole." *Williams v. Commonwealth,* Ky., 569 S.W.2d 139, 144 (1978).

ry was committed at trial, because the witness's oath at one proceeding is no more binding than his former oath. *Anderson,* 168 S.W.2d at 53. Thus, the same type of evidence should not be sufficient to establish the truthfulness of a witness's prior testimony. In any event, we can find no authority which bound the trial court to presume that Garner's original testimony was true. Therefore, we conclude that the test employed by the trial court was appropriate under the circumstances.

While our determination of the first two issues necessarily was done as a matter of law, our review of this last issue is done pursuant to an abuse of discretion standard. *See Brown,* 932 S.W.2d at 362.

Spaulding's theory of the case was that he was pursued by the victim and Garner, that he pulled out the knife when he no longer had any avenues of retreat, and that he had no choice but to fight. The Commonwealth called eighteen other witnesses besides Garner. A number of these witnesses contradicted Spaulding's version of events. According to these witnesses, Spaulding challenged the victim and Garner after the original fight had dissipated, and Spaulding was the aggressor in the fight that ended in the fatal stabbing. Thus, Spaulding was not convicted solely on the testimony of Garner. Further, the impact of Garner's testimony was lessened when counsel for the defense cross-examined Garner regarding his previous testimony. Based on these and other facts contained in the record, we cannot say that the trial court abused its discretion in finding that, absent Garner's testimony, there was sufficient evidence to support Spaulding's conviction.

For the reasons set forth above, the decision of the Court of Appeals is hereby reversed.

LAMBERT, C.J.; COOPER, GRAVES, and WINTERSHEIMER, JJ., concur.

STUMBO, J., concurs in part and dissents in part by separate opinion, with STEPHENS, J., joining.

STUMBO, Justice, concurring in part and dissenting in part.

While I concur with the majority's analysis of the issues of collateral estoppel and the time limitations of CR 60.02, I must dissent from the final portion of the opinion which concludes the trial court did not err when it denied Spaulding a new trial.

As the majority correctly notes, when reviewing a conviction obtained based on perjured testimony, the Court's overriding concern must be the integrity of the judicial process. During such an inquiry, the "question of the guilt or innocence of the accused is not a necessary subject of the inquiry." *Anderson v. Buchanan,* Ky., 292 Ky. 810, 820, 168 S.W.2d 48, 54 (1943). Despite this clear proposition, the trial court indeed focused on the question of Spaulding's guilt or innocence when it treated Garner's perjured testimony as a nullity, then proceeded to review the remaining evidence against Spaulding and conclude this evidence alone was sufficient to support the conviction of manslaughter.

Rather than weighing the evidence at trial under the fiction that the perjured testimony never came in, the trial court should have done the exact opposite. It should have looked closely at the perjured testimony and weighed the likely effect that testimony had on the jury. If there existed any possibility that the perjured testimony contributed to Spaulding's conviction, then the trial court should have vacated the conviction and granted a new trial.

Garner was the only eye-witness to the actual stabbing, and, without reservation, he swore that Spaulding swung the knife at the victim and plunged it into his chest. In my mind, there is no doubt that Garner's testimony sealed the Commonwealth's case and helped ensure the conviction. To allow that conviction to stand, despite the knowledge that Garner's testi-

mony was untruthful, seriously undermines the integrity of the judicial process. I would, therefore, affirm the decision of the Court of Appeals and remand the case for a new trial.

STEPHENS, J., joins.