# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

July 19, 2011

No. 10-30443

Lyle W. Cayce
Clerk

JOHN KINSEL

Petitioner-Appellant Cross-Appellee

v.

BURL CAIN, WARDEN, LOUISIANA STATE PENITENTIARY

Respondent-Appellee Cross-Appellant

Appeals from the United States District Court
for the Eastern District of Louisiana

Before SMITH, WIENER, and OWEN, Circuit Judges.

WIENER, Circuit Judge:

Petitioner-Appellant John Kinsel's conviction in Jefferson Parish, Louisiana district court for sexually abusing A.M., the ten-year-old daughter of his girlfriend at the time, was based primarily on A.M.'s trial testimony against him. Eight years later, as an adult, A.M. voluntarily approached the parish district attorney's office to recant her testimony under oath. Kinsel then filed a state postconviction petition, asking for his conviction to be vacated or, in the alternative, for a new trial in light of the newly discovered evidence of A.M.'s recantation. After holding an evidentiary hearing at which A.M. testified, the Louisiana trial court ordered a new trial. The Louisiana appellate court reversed, however, holding that the trial court abused its discretion and

No. 10-30443

dismissing Kinsel's petition for failure to establish a constitutional violation at trial. The Louisiana Supreme Court affirmed without opinion. Kinsel then filed this federal habeas corpus application, which the district court dismissed. For the reasons that follow, we affirm.

## I.  FACTS & PROCEEDINGS

### A.  Facts

On January 30, 1997, Kinsel was charged with the aggravated rape of a child—his girlfriend's daughter, A.M. The primary evidence presented against Kinsel at trial was A.M.'s testimony. The only other family member who corroborated A.M.'s testimony was Jason Medlin, A.M.'s older brother, who was fifteen years old at the time. Jason testified that on one occasion Kinsel had told him and his other sister to take a nap while Kinsel went into a room with A.M. Jason testified that he heard "kissing sounds" coming from the room and that A.M. became angry when he asked her about it afterwards.

Dr. Scott Benton, an expert in pediatric forensic examinations, was also proffered by the prosecution. He had examined A.M. on October 9, 1996 and observed "abnormalities" in the area around the hymen, which were *consistent with* but not *indicative of* sexual abuse. Dr. Benton's report also indicated that A.M. did not have any vaginal discharge or scars or bruises in the vaginal or anal areas. It also recorded A.M.'s telling Dr. Benton that Kinsel had sexually abused her "every morning" while she lived at her grandfather's house, which was later controverted as an impossibility by the testimony of A.M.'s mother, grandfather, and Kinsel.

The defense presented numerous witnesses that undermined A.M.'s testimony. Adrienne Medlin, A.M.'s mother and Kinsel's girlfriend, testified that she never suspected Kinsel of any sort of child sexual abuse and therefore did not call the police when A.M. first told her of the alleged abuse. Adrienne claimed that she never saw Kinsel act inappropriately with A.M. and that, to the

contrary, he acted "like a father" to and was "protective" of all of her children, namely A.M., Jason, and her other daughter from a previous marriage, and her son with Kinsel. Adrienne also testified that, although A.M. claimed that Kinsel sexually abused her every morning at Adrienne's father's house, Kinsel never spent one single night with the family when they were living there. Furthermore, Adrienne noted that when A.M. was two years old, she had placed a crayon in her vagina, which could have caused the slight physical abnormalities noted by Dr. Benton. She explained that she had always suspected her daughter of lying about the sexual abuse because (1) A.M.'s friend had previously falsely accused someone of similar acts, and (2) A.M. had stated that Kinsel had black pubic hair when Adrienne knew that he had blonde pubic hair.

Earl Roberts, A.M.'s grandfather, also testified for the defense, corroborating Adrienne's testimony that Kinsel never stayed at his house when A.M. and her family lived with him. He testified that he never saw Kinsel act in a sexually inappropriate manner. Stacey Plaisance, A.M.'s aunt and Adrienne's sister, testified that "[A.M.] just hated [Kinsel] because he made them pick up their mess and mind their mother. [A.M.'s] always been kind of unruly, smart mouth. She just never had no discipline until [Kinsel] come around. She just resented it, I guess." And Georgette Evans, a friend of A.M., testified that once when she was alone with A.M. she asked why A.M. had said "all that stuff" about Kinsel, and "[A.M.] said 'Because whenever he met my mom, I didn't think my mom was happy so I said all that stuff 'cause I never liked him and I wanted my mom to be happy and I didn't think she was happy.'"

Finally, Kinsel took the stand and unequivocally denied all of A.M.'s allegations of sexual abuse, threats, and physical violence. He testified about the hours he worked and about the houses where he stayed with A.M.'s family, implying that it was physically impossible for him to have committed the alleged acts without any other adult being in the house and knowing about it.

No. 10-30443

The jury found Kinsel guilty as charged of aggravated rape, and the trial judge sentenced him to life imprisonment at hard labor without parole. The Louisiana Fifth Circuit Court of Appeal affirmed Kinsel's conviction,[1] and the Louisiana Supreme Court denied relief without opinion on March 28, 2002.[2] On March 28, 2003, Kinsel filed a state postconviction petition in the Louisiana trial court, which was denied. The Louisiana Fifth Circuit affirmed, and the Louisiana Supreme Court denied Kinsel's appeal without opinion.[3] Kinsel then filed a federal habeas corpus petition, which was dismissed with prejudice by the district court on January 5, 2005. His certificate of appealability was denied on March 15, 2006.[4]

In May 2005, when A.M. was eighteen years old and living in Colorado, she contacted Kinsel's attorney's office. Kinsel's attorney told A.M. that she could not speak with her because she represented Kinsel but advised A.M. to contact the Jefferson Parish (Louisiana) district attorney's office. A.M. subsequently moved back from Colorado to New Orleans, and, on October 20, 2005, she made a sworn statement to the district attorney recanting her accusations against Kinsel.

**B. Proceedings**

On March 14, 2006, Kinsel, acting pro se, filed his second state postconviction petition. His counsel filed a revised petition on Kinsel's behalf on June 1, 2006, asking for his conviction to be vacated or, in the alternative, for a new trial in light of the newly discovered evidence of A.M.'s recantation.

---

[1] *State v. Kinsel*, 783 So. 2d 532 (La. App. 2001).

[2] *State v. Kinsel*, 812 So. 2d 641 (La. 2002).

[3] *State v. Kinsel*, 870 So. 2d 267 (La. 2004).

[4] *Kinsel v. Cain*, No. 05-30170, Order (Mar. 16, 2007).

No. 10-30443

The Louisiana trial court held an evidentiary hearing on October 4, 2006, at which A.M. and others testified. A.M. affirmed her recantation under oath but made misleading statements on cross-examination regarding her recollection and her motivation to make perjured testimony in the first place. The state trial judge concluded:

> I'm not sure I believe [A.M.] about whether it happened or not, but I don't know at which time I'm supposed to believe her. So, based on that . . . and also based on reviewing the rest of the evidence and the testimony, *I find that in no way can one convict absent her testimony*. And, therefore, I have nothing else to hang the conviction on than her testimony.

Based on this reasoning, the trial judge granted Kinsel a new trial.

The State appealed the trial court's decision to the Louisiana Fifth Circuit Court of Appeal. With one judge dissenting, the panel majority held that the district court had abused its discretion in granting Kinsel a new trial and therefore reversed the district court's order.[5] The Louisiana Supreme Court denied Kinsel's appeal without reasons on November 9, 2007.[6]

On April 2, 2008, Kinsel filed his second federal habeas corpus application. The district court transferred the petition under 28 U.S.C. § 1631 to a previous panel of this court to determine whether the successive habeas application should be allowed. We "conclude[d] Kinsel's claim of witness recantation at least warrant[ed] a fuller exploration by the district court" but "note[d] that the district court may dismiss the motion if it determines that this claim does not satisfy the successive standard."[7]

---

[5] *State v. Kinsel*, 06-KH-858 (La. App. 2006).

[6] *State v. Kinsel*, 967 So. 2d 499 (La. 2007).

[7] (internal quotation marks omitted) (citing *Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001); 28 U.S.C. § 2244(b)(4)).

No. 10-30443

Following our authorization, a magistrate judge first issued a report and recommended that the district judge dismiss the petition as untimely because more than one year had passed between the time that A.M. called Kinsel's attorney and Kinsel filed his federal habeas petition (notwithstanding the time that was tolled for his state postconviction proceedings). The district court disagreed, however, finding that the petition was timely because the statute of limitations had not begun to run until A.M. actually recanted under oath. The district court nevertheless dismissed Kinsel's petition, ruling that the Louisiana Fifth Circuit reasonably applied established federal law and reasonably determined the facts in dismissing Kinsel's postconviction petition. The district court did not expressly consider whether Kinsel had satisfied the standard for filing a successive federal habeas application.

Kinsel timely filed a notice of appeal.

## II.  ANALYSIS

### A.  Standard of Review

"On appeal from the denial of a § 2254 petition, this court reviews a district court's findings of fact for clear error, and it reviews a district court's conclusions of law *de novo*, applying the same standard of review to the state court's decision as the district court."[8] Because Kinsel filed his federal habeas application after 1996, the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to his claims.[9] Pursuant to the AEDPA, a federal court may grant habeas corpus relief to Kinsel only if the state court's adjudication of his claims on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

---

[8] *Robertson v. Cain*, 324 F.3d 297, 301 (5th Cir. 2003) (emphasis in original and citation omitted).

[9] *Lindh v. Murphy*, 521 U.S. 320, 324-26 (1997).

No. 10-30443

determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[10]

The Supreme Court has recently made a point to explain that this standard "is a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."[11] Specifically, "for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'"[12] In addition, the AEDPA instructs that "a determination of a factual issue made by a State court shall be presumed to be correct."[13]

## B. Kinsel's Claim Is Barred by the AEDPA's Bar on Successive Petitions

The AEDPA bars state prisoners from filing second or successive federal habeas applications with one relevant exception:

A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless . . . the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and [ ] the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the

---

[10] 28 U.S.C. § 2254(d).

[11] *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted).

[12] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (citations omitted).

[13] 28 U.S.C. § 2254(e)(1).

No. 10-30443

applicant guilty of the underlying offense.[14] This actual innocence exception thus allows a petitioner to overcome the AEDPA's bar on successive applications and pass through the "gateway" to argue the merits of his habeas claims if he establishes by clear and convincing evidence that the outcome of the trial would have been different but for constitutional error. In the instant case, we granted Kinsel leave to file this successive federal application, noting that "the district court may dismiss the motion if it determines that this claim does not satisfy the successive standard." The district court, however, failed to analyze whether Kinsel's claims satisfy the successive standard and instead dismissed the claims on the merits. This was an error,[15] and we must first determine on appeal whether Kinsel has satisfied the AEDPA standard.

Kinsel asserts in his application that (1) he is "actually innocent of the crime," i.e., he did not sexually abuse A.M., as supported by her newly discovered recantation, and (2) his rights "to a fair trial, due process of law, and his right to confront his accusers, in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution" were violated. Although the newly discovered evidence of A.M.'s recantation does call her trial testimony into question, the Louisiana trial judge concluded, *not* that Kinsel was "actually

---

[14] *Id.* § 2244(b)(2)(B)(ii). The AEDPA provides another exception if the petitioner can show "that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," *id.* § 2244(b)(2)(B)(I), but this exception is inapplicable here.

[15] *See Brown v. Lensing*, 171 F.3d 1031, 1032 (5th Cir. 1999) ("Our authorization for [petitioner] to file a successive petition is not dispositive of the critical question. . . . [T]he trial court was obliged by the statute to dismiss [petitioner's] claim if it did not meet the requirements of § 2244."). *See also, e.g., Jordan v. Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1357 (11th Cir. 2007) ("[T]he district court not only can, but must, determine for itself whether th[e] requirements [of § 2244(b)(2)] are met."); *Bennett v. United States*, 119 F.3d 468, 470 (7th Cir. 1997) ("[T]he district court must dismiss the motion that we have allowed the applicant to file, without reaching the merits of the motion, if the court finds that the movant has not satisfied the requirements for the filing of such a motion.").

innocent" and should therefore be exonerated because no reasonable juror could convict him in light of the recantation, but rather that Kinsel was entitled to a *new trial* because, *if* reasonable jurors *should believe* the recantation, none could convict "absent her testimony." In the end, the trial judge stated that he did not know *when* to believe A.M.—at trial or at the postconviction evidentiary hearing—and therefore determined that Kinsel should have a new trial. On appeal, the Louisiana Fifth Circuit likewise found A.M.'s recantation to be "unreliable and inconsistent."

Under the AEDPA, we must presume the correctness of the state court's factual finding that A.M.'s recantation lacked credibility,[16] recognizing that credibility determinations in particular are entitled to a strong presumption of correctness.[17] Although Kinsel could have rebutted this presumption,[18] he has not succeeded in doing so.[19] We conclude, therefore, that Kinsel's reliance on A.M.'s recantation alone does not satisfy his burden under § 2244(b)(2)(B)(ii).[20]

---

[16] *Id.* § 2254(e)(1).

[17] *See Pippin v. Dretke*, 434 F.3d 782, 792 (5th Cir. 2005) ("A trial court's credibility determinations made on the basis of conflicting evidence are entitled to a strong presumption of correctness and are virtually unreviewable by the federal courts." (internal quotation marks and citations omitted)).

[18] *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence.").

[19] On this point we think it important to clarify that, although we do not consider state court credibility determinations when determining whether a petitioner has made a *prima facie* showing of his entitlement to bring a successive petition, *In re Wilson*, 442 F.3d 872, 878 (5th Cir. 2006), such determinations may be relevant when, as here, we are tasked with determining whether a petitioner has actually satisfied § 2244(b)(2)(B)'s requirements.

[20] To the extent that Kinsel asserts a freestanding actual innocence claim, i.e., that his continued imprisonment itself violates the Eighth Amendment and warrants habeas relief, *see Herrera v. Collins*, 506 U.S. 390, 417 (1993), we have repeatedly stated that such claims are not cognizable in the Fifth Circuit. *Graves v. Cockrell*, 351 F.3d 143, 151 (5th Cir. 2003) (collecting cases). Moreover, even if we were to consider the merits of that claim, because "the

No. 10-30443

In addition, we agree with the district court that the Louisiana Fifth Circuit reasonably determined that Kinsel has not established that errors at trial violated his rights under the Due Process Clause, the Confrontation Clause, or the Sixth Amendment.

Initially, Kinsel asserted that the state prosecutor knew that A.M. was going to perjure her testimony before she testified at trial. If this allegation had proved to be true, the State would have violated Kinsel's due process rights, as articulated by clearly established federal law.[21] But, the Louisiana Fifth Circuit here determined that "the record as a whole does not show the prosecutors either coerced or knowingly used false testimony from the victim."[22] The court based this finding on the prosecutors' testimony that A.M. never informed them that she was lying, and on A.M.'s own testimony that she did not tell the prosecutors that she was lying, only that she did not want to testify on the morning of trial:

> Q.    You never told [the district attorney] that you were lying about this defendant Mr. Kinsel representing (sic) you. What you told him was, I don't want to do any—I don't want to do anymore. I'm tired, I'm scared, I want to go home? Is that right?
> A. Yes—yes.

The Louisiana Fifth Circuit's factual finding that the prosecutors did not know that A.M. was lying,[23] therefore, is reasonable if for no reason other than by A.M.'s own testimony.

---

threshold showing for such an assumed right would necessarily be extraordinarily high," *Herrera*, 506 U.S. at 417, Kinsel would not be able to meet it for the same reasons he cannot meet the lesser AEDPA standard, i.e., recantations are suspect and A.M. is not a credible witness. *See House v. Bell*, 547 U.S. 518, 554-55 (2006).

[21] *See, e.g.*, *Durley v. Mayo*, 351 U.S. 277, 290-91 (1956) ("It is well settled that to obtain a conviction by the use of testimony known by the prosecution to be perjured offends due process.").

[22] *Kinsel*, 06-KH-858, at 5.

[23] The Louisiana trial court did not make a factual determination on this issue.

No. 10-30443

The Supreme Court has held that the Due Process Clause is violated when the government knowingly uses perjured testimony to obtain a conviction.[24] Although some circuits recognize a due process violation when perjured testimony is provided by a government witness even *without* the government's knowledge,[25] we are limited by the AEDPA to applying only established Supreme Court precedent in our review of a state court's reasonableness.[26] Consequently, given the Louisiana Fifth Circuit's reasonable factual finding that the prosecutors did *not* know that A.M. was lying at trial, we cannot say that the state court unreasonably applied established federal law in determining that Kinsel's due process rights were thus *not* violated.

Kinsel never explains how his Confrontation Clause rights were violated at trial, as his attorney did have an opportunity to cross-examine A.M. Neither does Kinsel provide any analysis of how his Sixth Amendment right to a fair trial was violated by A.M.'s perjured testimony. Although the perjury may have

---

[24] *See Napue v. Illinois*, 360 U.S. 264, 269 (1959). *See also Creel v. Johnson*, 162 F.3d 385, 391 (5th Cir. 1998) ("A state denies a criminal defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. The defendant must show that (1) the testimony was false, (2) the state knew it was false, and (3) the testimony was material." (internal citations omitted)).

[25] *See Ortega v. Duncan*, 333 F.3d 102, 108 (2d Cir. 2003) ("[W]hen false testimony is provided by a government witness without the prosecution's knowledge, due process is violated only if the testimony was material and the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." (internal quotation marks omitted)). *But see United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980) ("[F]or perjury by a witness to constitute grounds for relief appellant would have to show that the Government knowingly used the perjured testimony.").

[26] *See Schaff v. Snyder*, 190 F.3d 513, 530 (7th Cir. 1999):

A habeas petitioner must support his claim with a Supreme Court decision that clearly establishes the proposition essential to his position. The clearly established Supreme Court precedent demands proof that the prosecution made knowing use of perjured testimony. [Petitioner] has admitted that, in this case, the prosecution did not; as a consequence, he cannot make a substantial showing of the denial of his right to due process . . . .

11

made the trial "unfair," the Supreme Court has never held that perjured testimony alone violates a defendant's Sixth Amendment right to a fair trial.

In sum, Kinsel has not established by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty of the underlying offense. In fact, Kinsel ultimately does not allege a constitutional error at all given that the prosecutors did not knowingly present false testimony at his trial. His successive federal application is therefore barred by the AEDPA (and would fail on the merits even if it were not barred).

## C. Kinsel's Due Process Claim

Beyond our limited review of his habeas claims under the AEDPA and apart from his assertion of actual innocence, Kinsel contends that the Louisiana appellate court violated his due process rights during his *state postconviction proceedings*. He asserts that the Louisiana Fifth Circuit deprived him of due process by refusing to give deference to the trial court's credibility determinations and by denying him the opportunity to present A.M.'s recantation to a jury. The dissenting Louisiana Fifth Circuit judge aptly summed up the constitutional error allegedly made by the majority:

> In the instant case, the trial judge *found* that the recanted testimony would materially affect the jury verdict. The trial judge evaluated the credibility of the recanting witness and struggled to determine which testimony, the trial testimony or the testimony during the Motion for New Trial, was truthful. In ruling the trial judge stated, "I'm not sure I believe her about whether it happened or not . . ." concluding, "I find that in no way can one convict absent her testimony."
>
> Given the vast discretion afforded the trial court in evaluating evidence and ascertaining whether a new trial is warranted, I find in this case, where the victim of the crime, upon whose testimony the guilty verdict rests, recants that testimony, the trial court has a valid legal basis to grant a new trial.[27]

---

[27] *Kinsel*, 06-KH-858, at 12 (Daley, J., dissenting) (emphasis added).

No. 10-30443

Undeniably, the trial court (along with the dissenting judge) and the appellate court hold Kinsel's postconviction petition to different standards: The trial court granted Kinsel a new trial based on its determination that A.M.'s recantation undermined her trial testimony without which no reasonable juror could have convicted Kinsel. The appellate court, in contrast, focused on the fact that Kinsel did not "establish[] a due process violation so as to make his post-conviction claim cognizable under [the Louisiana postconviction statute]."

The differing approaches could stem from the fact that the trial court and the dissenting appellate judge treat Kinsel's postconviction petition as a motion for a new trial,[28] for which Louisiana law only requires the movant to show that "if the evidence had been introduced at the trial[,] it would probably have changed the verdict or judgment of guilty."[29] If this standard were applicable to Kinsel's postconviction petition requesting a new trial, then the Louisiana Fifth Circuit might well have erred in reversing the trial court's decision.[30] But, if the Louisiana Fifth Circuit were correct that Kinsel must first show that his "conviction was obtained in violation of the constitution of the United States or the state of Louisiana"[31]—regardless of his request for a new trial in the alternative to exoneration—then that court did not err in concluding that Kinsel failed to establish that a constitutional violation occurred at his trial.

---

[28] Both the trial court and the appellate dissent refer to Kinsel's petition as a motion for a new trial. *See* State R. at 167 ("I feel I have no other decision to make other than to grant your motion for a new trial."); *Kinsel*, 06-KH-858, at 12 (Daley, J., dissenting) ("The trial judge evaluated the credibility of the recanting witness and struggled to determine which testimony, the trial testimony or the testimony during the Motion for New Trial, was truthful.").

[29] LA. CODE CRIM. PROC. ANN. art 851(3).

[30] *See State v. Prudholm*, 446 So.2d 729, 735 (La. 1984) ("The application of [motion for a new trial] precepts to newly discovered evidence by the trial judge, although a question of law, is entitled to great weight, and his discretion should not be disturbed on review if a reasonable man could differ as to the propriety of the trial court's action." (emphasis added)).

[31] LA. CODE CRIM. PROC. ANN. art 930.3(1).

No. 10-30443

The bottom line is that the proper court to review whether the Louisiana Fifth Circuit deprived Kinsel of due process during his postconviction proceedings was either the Louisiana Supreme Court, which dismissed Kinsel's direct appeal of the decision, or the U.S. Supreme Court, to which Kinsel never petitioned for certiorari review of his state postconviction proceedings. We, as a federal appeals court entertaining a *federal* habeas corpus application, are without jurisdiction to review the constitutionality of Kinsel's state postconviction proceedings. Indeed, we are barred from doing so by our "no state habeas infirmities" rule.[32] It is beyond regrettable that a possibly innocent man will not receive a new trial in the face of the preposterously unreliable testimony of the victim and sole eyewitness to the crime for which he was convicted. But, our hands are tied by the AEDPA, preventing our review of Kinsel's attack on his Louisiana postconviction proceedings, so we dutifully dismiss his claim.

## CONCLUSION

For the foregoing reasons, the district court's denial of federal habeas relief to Kinsel is AFFIRMED.[33]

---

[32] *See, e.g.*, *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999) ("[The petitioner] argues that he was denied due process in his state habeas proceeding . . . . Our circuit precedent makes clear that [the petitioner's] claim fails because infirmities in state habeas proceedings do not constitute grounds for relief in federal court." (internal quotation marks and citations omitted)); *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995):

> [E]rrors in a state habeas proceeding cannot serve as a basis for setting aside a valid original conviction. An attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself.

(internal quotation marks and citation omitted).

[33] Because we determine that Kinsel's successive habeas application is barred by the AEDPA, we need not reach the issue whether his application was timely.