# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-30458

United States Court of Appeals
Fifth Circuit

**FILED**
May 23, 2018

Lyle W. Cayce
Clerk

ALBERT NORMAN PIERRE, SR.,

      Petitioner - Appellee

v.

DARREL VANNOY, WARDEN, LOUISIANA STATE PENITENTIARY,

      Respondent - Appellant

———————————

Appeal from the United States District Court
for the Eastern District of Louisiana

———————————

Before WIENER, GRAVES, and HO, Circuit Judges.

JAMES C. HO, Circuit Judge:

A Louisiana jury found Albert Norman Pierre, Sr., guilty of aggravated rape of a child under the age of thirteen. During his trial, the child (C.C.) testified that she had not been "sexually active," other than Pierre's abuse. Over a year later, C.C. informed authorities for the first time that another adult molested her during the same period of time that Pierre molested her.

Pierre subsequently sought post-conviction relief, arguing that C.C. perjured herself at trial by denying that she was "sexually active" other than Pierre's abuse. The Louisiana Supreme Court denied Pierre's request. Pierre then sought federal habeas relief.

No. 17-30458

Congress has directed that federal courts may not grant habeas relief unless the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). We have observed that "clearly established Supreme Court precedent demands proof that the prosecution made *knowing* use of perjured testimony" to establish a constitutional violation. *Kinsel v. Cain*, 647 F.3d 265, 272 & n.26 (5th Cir. 2011) (emphasis added). And the district court found "no evidence to suggest that the State (or anyone whose knowledge was imputable to the State) knew that C.C. was offering false testimony at trial." Yet the district court granted habeas relief anyway, in a three-page order devoid of Supreme Court and Fifth Circuit precedent. We reverse.

I.

C.C. lived with her grandmother and Pierre, her grandmother's boyfriend. When she was twelve, C.C. told her parents that Pierre had been molesting her for six years. C.C.'s parents immediately notified authorities. Pierre was subsequently indicted for aggravated rape of a female juvenile under thirteen, in violation of Louisiana Revised Statute § 14.42A(4).[1]

At trial, C.C. described an occasion when Pierre took her for a medical exam to determine whether she had been sexually active. According to C.C., the nurse practitioner declined to conduct a physical exam based on C.C.'s representation that she was not sexually active. This testimony prompted the prosecutor to inquire whether C.C. had been "sexually active other than the things that [Pierre] had done to you." C.C. replied "No."

---

[1] For a more detailed explication of the facts underlying Pierre's conviction, see *State v. Pierre*, No. 2009 KA 0454, 2009 WL 3162246, at *1–3 (La. Ct. App. Sept. 11, 2009), *excerpted in Pierre v. Vannoy*, No. 16-1336, 2016 WL 9024952, at *1–3 (E.D. La. Oct. 31, 2016), *report and recommendation adopted in part* 2017 WL 2267195 (E.D. La. May 23, 2017).

No. 17-30458

A jury found Pierre guilty, and the court sentenced him to life imprisonment at hard labor without parole, probation, or suspension of sentence. His conviction and sentence were affirmed on direct appeal. *State v. Pierre*, No. 2009 KA 0454, 2009 WL 3162246, at *1–3 (La. Ct. App. Sept. 11, 2009), *review denied* 31 So. 3d 1054 (La. 2010).

Over a year later, C.C. revealed that Michael Percle—the son-in-law of C.C.'s legal guardian—had also molested her during the same period of time as Pierre's abuse. As the Louisiana Supreme Court explained:

> C.C. testified that she did not reveal the abuse at the hands of Percle either before or during [Pierre's] trial, because she was afraid that if she did so, she would be removed from the home and deprived of her 'nanny,' as in fact happened after [she came forward]. C.C. testified that she decided to come forward when her nieces, ages three and six, began visiting the Percle home and she became afraid that what had happened to her would happen to them.

*State v. Pierre*, 125 So. 3d 403, 407 (La. 2013). The State investigated C.C.'s allegations, but declined to charge Percle.[2]

Sixteen months later, the State informed Pierre's counsel that C.C. had made allegations against Percle. Pierre then sought post-conviction relief, arguing that he was denied due process because C.C. "recently recanted her testimony." The state trial court granted relief, ruling that Pierre "made a *bona fide* claim of actual innocence." The court of appeals affirmed. But a dissent emphasized that C.C. "never recanted her testimony regarding [Pierre] raping her." *State v. Pierre*, No. 2013 KW 0150, 2013 WL 12124006, at *1 (La. Ct. App. Apr. 5, 2013) (Crain, J., dissenting). As the dissent explained: "The victim's false statement that she was abused by no one else does not require a conclusion that the defendant did not rape her." *Id.*

---

[2] For a more detailed explication, see *Pierre*, 125 So. 3d at 406–07, *excerpted in Pierre*, 2016 WL 9024952, at *3–4.

No. 17-30458

The Louisiana Supreme Court reinstated Pierre's conviction and sentence. Before that court, Pierre conceded that he could not satisfy the actual-innocence standard. He instead argued that the State's 16-month delay in disclosing C.C.'s allegations against Percle deprived him of due process. *Pierre*, 125 So. 3d at 408–09. The court rejected Pierre's argument on prejudice grounds—by the time C.C. revealed Percle's abuse, the time for Pierre to file a new trial motion had already expired. *Id.* at 411 ("The passage of time, and not prosecutor Rhodes, thus dictated that [Pierre] cast his lot with the extraordinarily high [actual-innocence] standard as a basis for overturning his conviction and sentence in state post-conviction proceedings.").

In the course of resolving this claim, the court also made clear that no state actor knew that C.C.'s trial testimony was false at the time of trial. *Id.* at 406, 410 (state unaware of "C.C.'s allegations against Michael Percle" before "November 2009").

In February 2016, Pierre sought federal habeas relief arguing, as relevant here, that his conviction violated due process because C.C. had testified falsely. The magistrate judge rejected Pierre's claims under both *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959)—as well as his argument that his conviction violated a freestanding due-process right to a fundamentally fair trial—because "the prosecution did not know and could not have known at the time of trial that there was anything false about C.C.'s testimony." *Pierre v. Vannoy*, No. 16-1336, 2016 WL 9024952, at *8–9, *10–18 (E.D. La. Oct. 31, 2016). As the magistrate judge explained, "the majority of federal circuit courts, *including significantly the Fifth Circuit* . . . require a petitioner to prove governmental knowledge of the false testimony," and there is no Supreme Court precedent to the contrary. *Id.* at *14–17 ("[W]hen there is no Supreme Court precedent to control a legal issue raised by a habeas petitioner, the state court's decision cannot be contrary to,

or an unreasonable application of, clearly established federal law, and no federal habeas relief is warranted."). Accordingly, the magistrate judge recommended denying relief.

The district court adopted the magistrate judge's report and recommendation "in all respects"—except for its conclusion. *Pierre v. Vannoy*, No. 16-1336, 2017 WL 2267195, at *1–2 (E.D. La. May 23, 2017). Despite the undisputed fact that the State lacked knowledge of the falsity, the district court nevertheless granted the writ—ignoring *sub silentio* the cases cited by the magistrate judge in his thorough and well-reasoned opinion.

## II.

We review habeas petitions under the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Because Pierre's claims were "adjudicated on the merits in State court," the writ "shall not be granted" unless the state court's adjudication resulted in a decision that "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In other words, the writ may issue only "in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with *[the Supreme] Court's* precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (emphases added). "If this standard is difficult to meet, that is because it was meant to be." *Id.*

Pierre argues that the Louisiana Supreme Court unreasonably applied "constitutional principles guaranteed by federal law"—specifically, that "a conviction based in part on false testimony . . . violates a defendant's right to a fundamentally fair trial," even if "the State was not aware of the false testimony."

But Pierre cites no Supreme Court precedent to support this proposition. Nor can he. As he conceded both in briefing and at oral argument, "no Supreme

Court case holds specifically that [State] knowledge is *not* required." That ends this case: "clearly established law signifies the holdings . . . of [the Supreme] Court's decisions." *Howes v. Fields*, 565 U.S. 499, 505 (2012) (internal quotation marks omitted). *See also Williams v. Taylor*, 529 U.S. 362, 381 (2000) (Stevens, J.) ("If this Court has not broken sufficient legal ground to establish an asked-for constitutional principle, the lower federal courts cannot themselves establish such a principle with clarity sufficient to satisfy the AEDPA bar.").

Without a Supreme Court case holding that the State's unknowing use of false testimony violates the Due Process Clause, Pierre cannot show that the Louisiana Supreme Court unreasonably applied clearly established federal law as determined by the Supreme Court of the United States. Indeed, as the Supreme Court "has held on numerous occasions," "it is not 'an unreasonable application of' 'clearly established federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Knowles v. Mirzayance*, 556 U.S. 111, 121–23 (2009) (citing cases). *See also Wright v. Van Patten*, 552 U.S. 120, 123–26 (2008) (no unreasonable application when Supreme Court "cases give no clear answer to the question presented, let along one in [petitioner's] favor") (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)); *Gomez v. Thaler*, 526 F. App'x 355, 359 (5th Cir. 2013) ("Because no decision of the Supreme Court has addressed the issue presented before us, it cannot be said that the state court unreasonably applied clearly established Federal law.") (brackets and internal quotation marks omitted). Accordingly, AEDPA requires us to deny Pierre's habeas petition.

This is not a close case. Pierre cannot point to a single case, either from the Supreme Court or our court, to support his argument. To the contrary, our precedent establishes precisely the opposite proposition. In *Kinsel v. Cain*, we explained that, "[a]lthough some circuits recognize a due process violation

when perjured testimony is provided by a government witness even *without* the government's knowledge, we are limited by the AEDPA to applying only established Supreme Court precedent," which "demands proof that the prosecution made knowing use of perjured testimony." 647 F.3d at 271–72 & n.26. *See also Kutzner v. Cockrell*, 303 F.3d 333, 337 (5th Cir. 2002) ("[D]ue process is not implicated by the prosecution's introduction or allowance of false or perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured.").[3]

The district court's failure to even mention *Kinsel* is particularly troubling, as *Kinsel* is practically indistinguishable from this case. In *Kinsel*, as here, a Louisiana jury found the defendant guilty of child rape "based primarily on [the victim's] trial testimony." 647 F.3d at 266. The victim in *Kinsel* later recanted her accusations. *Id.* at 266, 268. We nevertheless denied relief. As we explained, we could not "say that the state court unreasonably applied established federal law in determining that Kinsel's due process rights

---

[3] *Kinsel* and *Kutzner* are but two in a long line of circuit precedent holding that false testimony gives rise to a due process claim only if the State had contemporaneous knowledge of the falsity. *See, e.g., Canales v. Stephens*, 765 F.3d 551, 573 (5th Cir. 2014); *Knox v. Johnson*, 224 F.3d 470, 478 (5th Cir. 2000); *Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000); *Braxton v. Estelle*, 641 F.2d 392, 395 (5th Cir. Unit A Apr. 1981). *See also Devoe v. Davis*, 717 F. App'x 419, 426–27 (5th Cir. 2018); *Isaac v. Cain*, 588 F. App'x 318, 327–28 (5th Cir. 2014); *Kelly v. Dretke*, 111 F. App'x 199, 208 (5th Cir. 2004); *McDuff v. Johnson*, 163 F.3d 1356 (5th Cir. 1998).

In addition, neither the Second nor Ninth Circuit cases cited by Pierre support the contention that the State's unknowing use of perjured testimony can give rise to relief under AEDPA. The Second Circuit's decision in *United States v. Wallach*, is unhelpful both because it is not a habeas case (it is a direct appeal of a federal conviction) and because it relies on a pre-AEDPA decision that the Second Circuit subsequently disavowed as inconsistent with AEDPA. 935 F.2d 445, 456–59 (2d Cir. 1991). *See Drake v. Portuondo*, 321 F.3d 338, 345 n.2 (2d Cir. 2003) (disavowing *Sanders v. Sullivan*, 863 F.2d 218 (2d Cir. 1988), which "explicitly relied on Justice Douglas'[s] *dissent* in *Durley v. Mayo*" because "AEDPA permits us to rely only on clearly established Supreme Court precedent"). And the Ninth Circuit's decisions explicitly did not apply AEDPA deference. *See Maxwell v. Roe*, 628 F.3d 486, 506 (9th Cir. 2010) ("[B]ecause the state court's decision was 'based on an unreasonable determination of the facts' . . . AEDPA deference no longer applies."); *Killian v. Poole*, 282 F.3d 1204, 1208 (9th Cir. 2002) ("AEDPA deference does not apply to Killian's perjury claim in this case.").

were thus *not* violated" because the State "did *not* know that [the victim] was lying at trial." *Id.* at 272. "In fact," we emphasized, "Kinsel ultimately does not allege a constitutional error at all given that the prosecutors did not knowingly present false testimony at his trial." *Id.* It is impossible to square the grant of habeas in this case with our denial of habeas in *Kinsel*.[4]

Moreover, a year before the Louisiana Supreme Court decision denying relief here, Justice Scalia reiterated that the Supreme Court has "never held" that the unknowing use of false testimony violates the Due Process Clause— and that it is "unlikely ever to do so." *Cash v. Maxwell*, 132 S. Ct. 611, 615 (2012) (Scalia, J., joined by Alito, J., dissenting from denial of certiorari) ("All we have held is that 'a conviction obtained through use of false evidence, *known to be such by representatives of the State*, must fall under the Fourteenth Amendment.'") (quoting *Napue*, 360 U.S. at 269).

\* \* \*

As the district court recognized, and as Pierre concedes, the State did not knowingly present false testimony at trial. So the Louisiana Supreme Court decision denying relief was neither contrary to, nor involved an unreasonable application of, clearly established Supreme Court precedent. We reverse the judgment of the district court and issue the mandate forthwith.[5]

---

[4] It bears mention that the victim in *Kinsel* affirmatively recanted her accusation. 647 F.3d at 266, 268. By contrast, and as previously noted, C.C. "never recanted her testimony regarding the defendant raping her." *Pierre*, 2013 WL 12124006, at \*1 (Crain, J., dissenting). Instead, she disclosed that "she had been molested by another person and the period of time overlapped with the defendant's abuse." *Id. See also id.* ("The victim's false statement that she was abused by no one else does not require a conclusion that the defendant did not rape her."); *Pierre*, 125 So. 3d at 409 (C.C.'s allegations against Percle "did not, in any event, amount to C.C.'s repudiation of any of her trial testimony against [Pierre]").

[5] Because it is undisputed that the State did not knowingly present perjured testimony, we need not address whether the underlying testimony was in fact false. It should go without saying, however, that no victim would consider rape the equivalent of being "sexually active" in any ordinary sense of that phrase. Nothing in our opinion today should be construed to hold otherwise.

No. 17-30458

JAMES C. HO, Circuit Judge, concurring:

The Court correctly reverses the grant of federal habeas relief. I write separately to call attention to the unusually troubling nature of the proceedings below.

In granting habeas relief, the district court ignored an act of Congress and the precedents of both the Supreme Court and this Court. In fact, it granted relief without citing a single federal decision. In doing so, the district court failed to demonstrate the respect for States and their judicial proceedings required by established federal law.

What's more, the district court added injury to insult when it refused to stay its judgment—and instead required the State to retry Pierre within 120 days or release him—despite the fact that its judgment was directly contrary to our precedents. *See, e.g.*, *Kinsel v. Cain*, 647 F.3d 265 (5th Cir. 2011) (denying habeas relief to convicted child rapist, despite victim's post-trial recantation, because State did not know testimony was false at time of trial).

I.

The Supreme Court has bemoaned the fact that "[f]ederal habeas review of state convictions . . . intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). It "frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." *Id.*

Indeed, that's precisely why Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996—"to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Id.* Congress made clear that "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* at 102–03. AEDPA permits

9

No. 17-30458

federal courts to grant relief *only* "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the U.S. Supreme] Court's precedents." *Id.* at 102.

Yet despite Congress's clear directive, the district court granted relief without even mentioning the U.S. Supreme Court—let alone explaining which of its precedents the Louisiana Supreme Court's decision conflicted with. In doing so, the district court "illustrate[d] a lack of deference to the state court's determination and an improper intervention in state criminal processes, contrary to the purpose and mandate of AEDPA and to the now well-settled meaning and function of habeas corpus in the federal system." *Id.* at 104. *See also id.* at 103 ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

As the Court explains today, this is not a remotely close case: There is a long line of unbroken precedent from both this Court and the U.S. Supreme Court holding that false trial testimony does not implicate a defendant's due process rights if the State was unaware of the falsity at the time the testimony was given. This mountain of precedent includes our ruling in *Kinsel v. Cain*, which is virtually identical in all respects to this case. 647 F.3d 265; *see* Majority Op. 6–8 & n.4. And the magistrate judge cited and analyzed all of this precedent in its thorough and well-reasoned opinion. *See, e.g., Pierre v. Vannoy*, No. 16-1336, 2016 WL 9024952, at *8–9, *14–15 (E.D. La. Oct. 31, 2016).

The district court cites none of this precedent. It found "no evidence to suggest that" the State knew of the alleged falsity at the time of trial. Yet it granted habeas relief anyway.

10

No. 17-30458

II.

There's more.  At a minimum, the district court should have allowed the State to maintain the status quo pending appeal of its demonstrably incorrect decision to grant relief.  But instead, the court forced the State to either release Pierre from a life sentence without the possibility of parole, or waste its resources on a retrial that this appeal would inevitably render unnecessary.

Moreover, the district court denied the State's stay request in a surprisingly dismissive manner.  The court said the State could release Pierre or retry him, but "[w]hat the State cannot do, however, is rely upon the now vacated conviction as a basis for denying bond" and keeping him in custody.

But that is precisely what Federal Rule of Appellate Procedure 23(c) allows.  Under Rule 23(c), the "prisoner *should remain in custody* if the State can 'demonstrate a substantial case on the merits' and the other factors militate against release."  *Woodfox v. Cain*, 305 F. App'x 179, 181 (5th Cir. 2008) (emphasis added) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)).  Allowing for such stays is eminently sensible:  "Although the decision of a district court granting habeas relief will have held that the judgment of conviction is constitutionally infirm, that determination itself may be overturned on appeal before the State must retry the petitioner."  *Hilton*, 481 U.S. at 779.

In sum, the district court's suggestion that a judgment granting habeas relief cannot be stayed pending appeal ignores not only Rule 23, but also the precedents of this Court and the Supreme Court.  So the court's dismissive rejection of the State's stay request is troubling—especially when one actually considers the factors governing Rule 23(c) stays.

The "most important" factor is the State's likelihood of success on appeal. *Woodfox*, 305 F. App'x at 181.  *See also Hilton*, 481 U.S. at 778 ("where the State establishes that it has a strong likelihood of success on appeal, or where,

No. 17-30458

failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible"); *Foster v. Gilliam*, 515 U.S. 1301, 1303 (1995) (Rehnquist, C.J., in chambers) (granting stay of "order releasing [defendants] from custody" because "the State will be able to present at the least a substantial case on the merits on appeal, and the other traditional factors in a stay analysis counsel in favor of continued custody").

Here, the State was destined to prevail on appeal under precedents like *Kinsel*—precedents that the district court did not even mention, let alone analyze.

The State also presented compelling arguments regarding the remaining stay factors, including that (1) Pierre "was convicted of the most heinous crime—the repeated rape" of a child "under his care and control"; (2) Pierre was serving a life sentence without the possibility of parole, and thus presented an obvious flight risk; (3) Pierre's release would "potentially cause irreparable emotional harm to the victim," not only because he would be released into her community, but also because her grandmother maintained relations with Pierre "throughout the trial and post[-]conviction proceedings"; and (4) Pierre's release would "put[] the entire community at risk," in light of evidence that he had engaged in "inappropriate sexual incidents with other minor children." *See Hilton*, 481 U.S. at 777–78 (describing the traditional stay factors and Rule 23–specific factors, including (1) "the possibility of flight"; (2) the "risk that the prisoner will pose a danger to the public if released"; and (3) the "State's interest in continuing custody and rehabilitation pending a final determination of the case on appeal," which is "strongest where the remaining portion of the sentence to be served is long").

\* \* \*

Judicial decisions should be construed charitably. But the rulings below are hard to comprehend. The district court failed to acknowledge, let alone

analyze, the binding precedents of this Court and the Supreme Court. And it did so despite the magistrate judge's comprehensive and dutiful opinion analyzing those precedents. *Cf. Felkner v. Jackson*, 562 U.S. 594, 598 (2011) ("That decision is as inexplicable as it is unexplained.").

To anyone who believes in the rule of law, the proceedings below should be disquieting. There will always be disagreements about the law. There will be times when one's sense of fairness and justice conflicts with the Constitution or established precedent. Perhaps that is what occurred below.

But we do not countenance people taking the law into their own hands. This principle binds federal judges as well. *See, e.g., Cavazos v. Smith*, 565 U.S. 1, 2 (2011) ("Because rational people can sometimes disagree, the inevitable consequence of [AEDPA] is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."); *White v. Woodall*, 134 S. Ct. 1697, 1701 (2014) ("[Section 2254(d) is] a provision of law that some federal judges find too confining, but that all federal judges must obey."). As Judge Bork once observed:

> In law, the moment of temptation is the moment of choice, when a judge realizes that in the case before him his strongly held view of justice, his political and moral imperative, is not embodied in a statute or in any provision of the Constitution. He must then choose between his version of justice and abiding by the American form of government. Yet the desire to do justice, whose nature seems to him obvious, is compelling, while the concept of constitutional process is abstract, rather arid, and the abstinence it counsels unsatisfying. To give in to temptation, this one time, solves an urgent human problem, and a faint crack appears in the American foundation. A judge has begun to rule where a legislator should.

Robert H. Bork, *The Tempting of America: The Political Seduction of the Law* 1 (1990). I concur.