JAMES C. HO, Circuit Judge, concurring:
The Court correctly reverses the grant of federal habeas relief. I write separately to call attention to the unusually troubling nature of the proceedings below.
In granting habeas relief, the district court ignored an act of Congress and the precedents of both the Supreme Court and this Court. In fact, it granted relief without citing a single federal decision. In doing *230 so, the district court failed to demonstrate the respect for States and their judicial proceedings required by established federal law.
What's more, the district court added injury to insult when it refused to stay its judgment-and instead required the State to retry Pierre within 120 days or release him-despite the fact that its judgment was directly contrary to our precedents. See , e.g. , Kinsel v. Cain , 647 F.3d 265 (5th Cir. 2011) (denying habeas relief to convicted child rapist, despite victim's post-trial recantation, because State did not know testimony was false at time of trial).
I.
The Supreme Court has bemoaned the fact that "[f]ederal habeas review of state convictions ... intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." Harrington v. Richter , 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). It "frustrates both the States' sovereign power to punish offenders and their good-faith attempts to honor constitutional rights." Id.
Indeed, that's precisely why Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996-"to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Id . Congress made clear that "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id . at 102-03, 131 S.Ct. 770. AEDPA permits federal courts to grant relief only "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the U.S. Supreme] Court's precedents." Id. at 102, 131 S.Ct. 770.
Yet despite Congress's clear directive, the district court granted relief without even mentioning the U.S. Supreme Court-let alone explaining which of its precedents the Louisiana Supreme Court's decision conflicted with. In doing so, the district court "illustrate[d] a lack of deference to the state court's determination and an improper intervention in state criminal processes, contrary to the purpose and mandate of AEDPA and to the now well-settled meaning and function of habeas corpus in the federal system." Id. at 104, 131 S.Ct. 770. See also id. at 103, 131 S.Ct. 770 ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").
As the Court explains today, this is not a remotely close case: There is a long line of unbroken precedent from both this Court and the U.S. Supreme Court holding that false trial testimony does not implicate a defendant's due process rights if the State was unaware of the falsity at the time the testimony was given. This mountain of precedent includes our ruling in Kinsel v. Cain , which is virtually identical in all respects to this case. 647 F.3d 265 ; see Majority Op. 227-29 & n.4. And the magistrate judge cited and analyzed all of this precedent in its thorough and well-reasoned opinion. See , e.g. , Pierre v. Vannoy , No. 16-1336, 2016 WL 9024952, at *8-9, *14-15 (E.D. La. Oct. 31, 2016).
The district court cites none of this precedent. It found "no evidence to suggest that" the State knew of the alleged falsity at the time of trial. Yet it granted habeas relief anyway.
II.
There's more. At a minimum, the district court should have allowed the State to *231 maintain the status quo pending appeal of its demonstrably incorrect decision to grant relief. But instead, the court forced the State to either release Pierre from a life sentence without the possibility of parole, or waste its resources on a retrial that this appeal would inevitably render unnecessary.
Moreover, the district court denied the State's stay request in a surprisingly dismissive manner. The court said the State could release Pierre or retry him, but "[w]hat the State cannot do, however, is rely upon the now vacated conviction as a basis for denying bond" and keeping him in custody.
But that is precisely what Federal Rule of Appellate Procedure 23(c) allows. Under Rule 23(c), the "prisoner should remain in custody if the State can 'demonstrate a substantial case on the merits' and the other factors militate against release." Woodfox v. Cain , 305 Fed.Appx. 179, 181 (5th Cir. 2008) (emphasis added) (quoting Hilton v. Braunskill , 481 U.S. 770, 778, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987) ). Allowing for such stays is eminently sensible: "Although the decision of a district court granting habeas relief will have held that the judgment of conviction is constitutionally infirm, that determination itself may be overturned on appeal before the State must retry the petitioner." Hilton , 481 U.S. at 779, 107 S.Ct. 2113.
In sum, the district court's suggestion that a judgment granting habeas relief cannot be stayed pending appeal ignores not only Rule 23, but also the precedents of this Court and the Supreme Court. So the court's dismissive rejection of the State's stay request is troubling-especially when one actually considers the factors governing Rule 23(c) stays.
The "most important" factor is the State's likelihood of success on appeal. Woodfox , 305 Fed.Appx. at 181. See also Hilton , 481 U.S. at 778, 107 S.Ct. 2113 ("where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible"); Foster v. Gilliam , 515 U.S. 1301, 1303, 116 S.Ct. 1, 132 L.Ed.2d 883 (1995) (Rehnquist, C.J., in chambers) (granting stay of "order releasing [defendants] from custody" because "the State will be able to present at the least a substantial case on the merits on appeal, and the other traditional factors in a stay analysis counsel in favor of continued custody").
Here, the State was destined to prevail on appeal under precedents like Kinsel -precedents that the district court did not even mention, let alone analyze.
The State also presented compelling arguments regarding the remaining stay factors, including that (1) Pierre "was convicted of the most heinous crime-the repeated rape" of a child "under his care and control"; (2) Pierre was serving a life sentence without the possibility of parole, and thus presented an obvious flight risk; (3) Pierre's release would "potentially cause irreparable emotional harm to the victim," not only because he would be released into her community, but also because her grandmother maintained relations with Pierre "throughout the trial and post[-]conviction proceedings"; and (4) Pierre's release would "put[ ] the entire community at risk," in light of evidence that he had engaged in "inappropriate sexual incidents with other minor children." See Hilton , 481 U.S. at 777-78, 107 S.Ct. 2113 (describing the traditional stay factors and Rule 23-specific factors, including (1) "the possibility of flight"; (2) the "risk that the prisoner will pose a danger to the public if released"; and (3) the "State's interest in continuing custody and rehabilitation pending a final determination *232 of the case on appeal," which is "strongest where the remaining portion of the sentence to be served is long").
* * *
Judicial decisions should be construed charitably. But the rulings below are hard to comprehend. The district court failed to acknowledge, let alone analyze, the binding precedents of this Court and the Supreme Court. And it did so despite the magistrate judge's comprehensive and dutiful opinion analyzing those precedents. Cf. Felkner v. Jackson , 562 U.S. 594, 598, 131 S.Ct. 1305, 179 L.Ed.2d 374 (2011) ("That decision is as inexplicable as it is unexplained.").
To anyone who believes in the rule of law, the proceedings below should be disquieting. There will always be disagreements about the law. There will be times when one's sense of fairness and justice conflicts with the Constitution or established precedent. Perhaps that is what occurred below.
But we do not countenance people taking the law into their own hands. This principle binds federal judges as well. See , e.g. , Cavazos v. Smith , 565 U.S. 1, 2, 132 S.Ct. 2, 181 L.Ed.2d 311 (2011) ("Because rational people can sometimes disagree, the inevitable consequence of [AEDPA] is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."); White v. Woodall , 572 U.S. 415, 134 S.Ct. 1697, 1701, 188 L.Ed.2d 698 (2014) ("[ Section 2254(d) is] a provision of law that some federal judges find too confining, but that all federal judges must obey."). As Judge Bork once observed:
In law, the moment of temptation is the moment of choice, when a judge realizes that in the case before him his strongly held view of justice, his political and moral imperative, is not embodied in a statute or in any provision of the Constitution. He must then choose between his version of justice and abiding by the American form of government. Yet the desire to do justice, whose nature seems to him obvious, is compelling, while the concept of constitutional process is abstract, rather arid, and the abstinence it counsels unsatisfying. To give in to temptation, this one time, solves an urgent human problem, and a faint crack appears in the American foundation. A judge has begun to rule where a legislator should.
Robert H. Bork, The Tempting of America: The Political Seduction of the Law 1 (1990). I concur.